(28 App. Div. 580.)

In re TAXATION OF MASURY'S ESTATE,

(Supreme Court, Appellate Division, Second Department. April 26, 1898.)

1. TRANSFER TAX—PROPERTY SUBJECT.
    Where property is transferred to a trustee to receive and pay the income to a beneficiary, and at a specified future date to pay over to him the principal, or, in case of his death, to pay it over to other designated persons, the fact that the grantor reserves the power to revoke or annul the trust during his lifetime, for the mere purpose, so far as appears, of protecting the beneficiary if occasion should arise, does not render the transfer one "intended to take effect in possession or enjoyment at or after the death" of the grantor; and upon the latter's death prior to the date designated for absolute payment over to the beneficiary, without having annulled the transfer, it is not to be included in an appraisal of his estate for purposes of taxation, under Tax Law, § 220.

2. SAME.
    In March, 1890, an owner of property transferred it to a trustee, in trust during the grantor's life to pay the net avails to himself or to his order, and, "from and after my death, to pay to my grandson the said net avails during his lifetime." Thereafter, in 1892, the grantor, in writing, directed the trustee to pay to said grandson all the net income "until this authority is revoked." The grantor died in 1895, without having revoked the latter authorization. Held, that the order upon the trustee did not operate to change the effect of the deed, which vested the beneficiary with no rights of property until the death of the grantor, and that, accordingly, it was within the scope of Tax Law, § 220.

Appeal from surrogate's court, Suffolk county.

In the matter of the appraisal for taxation of the estate of John W. Masury. Appeal from a decree modifying on appeal a former de-

cree confirming the report of the appraiser assessing tax pursuant to the tax law, and, as so modifying such former decree, assessing and fixing the tax on the transfers of certain property. Modified.

Argued before GOODRICH, P. J., and CULLEN, BARTLETT, HATCH, and WOODWARD, JJ.

J. Noble Hayes, for appellant John M. Masury.

T. Ludlow Chrystie, for appellant F. L. M. Masury.

Robert B. Bach, for respondent county treasurer of Suffolk county.

WOODWARD, J. In the year 1882, John W. Masury, then a resident of Moriches, in the town of Brookhaven, Suffolk county, this state, adopted his grandsons John Miller Masury and Frederick L. M. Masury as his sons. In 1883 the said John W. Masury created a trust for John Miller Masury, amounting to $150,000. This trust was subsequently revoked, and in 1888 a new trust for the same amount was created, which was in turn revoked on the 7th day of September, 1892. On the 14th day of September of the same year, the said John W. Masury executed two deeds of trust to the Brooklyn Trust Company in favor of John M. Masury,—one of them for $81,140.63, and the other for $119,145. In December, 1892, the said John W. Masury executed a deed of trust in favor of his other adopted son, Frederick L. Miller Masury, transferring to the Brooklyn Trust Company securities valued at $62,889.38. Prior to this time, and on the 10th day of March, 1890, the said John W. Masury executed and delivered to the Brooklyn Trust Company a deed of trust in favor of John M. Masury, transferring securities valued at $102,500. The avails of all these trusts, with the exception of the last one, were to go immediately to the beneficiaries of the trusts, the special facts in relation to which will be discussed hereafter. In the trust created by the deed of March 10, 1890, it was provided that the avails should go to the said John W. Masury or his order during his lifetime; and from and after his death the avails were to go to his grandson John Miller Masury during his life, and afterwards to those who might be designated in his will, or to his children. This was modified on the 19th day of July, 1892, by a written instrument directing the Brooklyn Trust Company to pay to John M. Masury "all the net income arising from the trust fund transferred to said company under said deeds of trust until this authority is revoked by me in writing." John W. Masury died on the 14th day of May, 1895. He died seised of a considerable property; and upon the petition of Grace Masury, widow of the deceased, the surrogate of Suffolk county appointed an appraiser to determine the amount of taxes due to the state under the provisions of the tax act. The appraiser, in his final report, as confirmed by the order of the surrogate's court, includes in his estimate of the estate of the deceased the property involved in the trust deeds, and from this report, and the order of confirmation, Frederick L. M. Masury, John M. Masury, and the Brooklyn Trust Company, their trustee, appeal, the county treasurer of Suffolk county appearing as respondent.

There is no question of fraud involved. It is conceded that John W. Masury acted in good faith, and with the single purpose of providing for his adopted sons, in executing and delivering the several

trust deeds. The only point at issue in determining this appeal is whether these deeds of trust were gifts among the living, or whether they were in some manner contingent upon the death of the said John W. Masury. It is conceded that if the deeds of trust were gifts made by John W. Masury to John M. and Frederick L. Miller Masury, taking full effect during the lifetime of the parties, the property would be beyond the reach of the statute; but a clause having been inserted in each of such deeds of trust, reserving the right of the grantor "to revoke and annul the same during my lifetime," it is urged that the gifts did not become absolute and complete until the death of the grantor, and that the property is therefore properly included in the appraisal.

This brings us to the consideration of the statute, and the legal effect of the reserved right in the deeds of trust. The statute, in so far as it relates to the question before us, reads as follows:

"A tax shall be and is hereby imposed upon the transfer of any property, real or personal, of the value of five hundred dollars or over, or of any interest therein or income therefrom, in trust or otherwise, to persons or corporations not exempt by law from taxation on real or personal property, in the following cases: * * * (3) When the transfer is of property made by a resident or by a nonresident, when such nonresident's property is within this state, by deed, grant, bargain, sale or gift made in contemplation of the death of the grantor, vendor, or donor, or intended to take effect, in possession or enjoyment, at or after such death." Tax Law, § 220.

It is necessary, to bring this property within the scope of the law, that the gift should have been made "in contemplation of the death of the grantor," or that it was "intended to take effect, in possession or enjoyment, at or after such death." The property need not have been in the possession of the appellants. If they were in the enjoyment of the property, or the income from the property, prior to the death of the grantor, and if their relations to the property were not changed by the fact of such death, then the order of the surrogate's court confirming the appraisal should be set aside in so far as it affects the rights of these appellants. It will not be contended that the series of trust deeds, beginning back in 1883, were made "in contemplation of the death of the grantor," in any legal sense. There is no such claim urged; but we are asked to determine that, because of the fact that the grantor might have revoked the trusts at any time during his lifetime, the rights of the appellants in the trust funds did not become absolute until after the death of the grantor, and that, therefore, the property passed into the possession of the appellants, or their rights became absolute, upon the death of the grantor, and it is subject to the tax which was ordered by the surrogate to be collected. This does not, however, follow. If it should be determined that the gift did not become absolute until the possibility of its annulment ceased, upon the death of the grantor, it would still be necessary to show that the gift was "intended to take effect, in possession or enjoyment, at or after such death"; and, to determine the intention of the donor, we must look, not to the argument of the respondent, but to the language of the deeds of trust, the relations which existed between the parties, and the fact of the beneficial enjoyment of the avails of the trust.

We will now consider the several deeds of trust, that we may determine whether they were "intended to take effect, in possession or enjoyment, at or after" the death of the grantor. The trust deed made to the Brooklyn Trust Company in the interests of Frederick L. M. Masury, and bearing date December 1, 1892, provides that the said trust company shall—

"Hold and possess the same upon the following express trust: First. To collect and receive the interest, income, or dividend from time to time which may accrue or become payable on account of the said bonds, securities, and property, or any other which may be substituted for the same or any part thereof, and to pay the net avails thereof to the guardian of my grandson Frederick L. Miller Masury; that is, to myself, during my lifetime, or at my death to my successor as guardian, viz. Captain L. F. Miller, of Salem, Mass., during the minority of my grandson. When my said grandson shall have reached his majority, viz. on the third day of December, 1895, all net avails of interest, income, or dividends shall be paid to my said grandson Frederick L. Miller Masury. Second. To deliver, pay, make over unto my said grandson Frederick L. Miller Masury the said securities, or any that may be substituted for the same, or any unexpended income on the third day of December, one thousand nine hundred and four. Third. On the death of my grandson Frederick L. Miller Masury, to deliver, pay, or make over the said securities, or any that may be substituted for the same or any unexpended income derived therefrom, to any person that my said grandson, Frederick L. Miller Masury, by his will, may bequeath the same; or, if he shall leave no will, to the child or children of my said grandson or any descendant per stirpes then living; or, if no such descendant be then living, to pay and deliver the same to my grandson John Miller Masury, brother of said Frederick L. M. Masury; or, if he be dead, leaving issue, to pay such issue the share the parent would take if living."

Clearly, there is nothing in this to indicate that it is "intended to take effect, in possession or enjoyment, at or after such death." It is specially provided that the income shall be paid to the guardian of the beneficiary until he shall be of age, when the income is to be paid to him personally; and this, whether the donor is living or dead. In a like manner, it is provided that on the 3d day of December, 1904, the entire fund shall vest in the beneficiary. This is not contingent upon the death of the grantor, but upon the arrival of a fixed and certain date; and, if we are to get at the intention of the act from the language used in raising the trust, then there can be no doubt that John W. Masury intended this deed of trust to become of full effect whether he lived or died; and the detail with which he provided for the disposal of the property in the event of the death of his grandson precludes the idea that he had any other motive in retaining the right to annul the deed than a prudent caution would suggest. It had no bearing upon the intention, and had he lived until after the 3d day of December, 1904, when the property had vested finally in the beneficiary, would any one have contended that the reserved right in the deed of trust still affected the title? There is nothing to indicate that the grantor had any intention of making use of this right except to protect the beneficiary should such action become necessary during his lifetime; and the fact that he did not make use of it up to the time of his death precludes the presumption that he would have done so at any time. At least, the presumption cannot be raised to show an intention directly contrary to that expressed in the deed of trust;

and the appellant Frederick L. Miller Masury having been in the enjoyment of the income from the date of the deed of trust, such payments having been made by the Brooklyn Trust Company as trustee of the fund, we must conclude that the title to the property passed to the trustee, and that it constituted no part of the property of the said John W. Masury at the time of his death, and should not have been included in an appraisal of his estate for the purpose of taxation under the tax act.

We are willing to agree with the learned court in Re Ogsbury, 7 App. Div. 71, 39 N. Y. Supp. 978, that:

"No opportunity should be given parties to evade the statute, and prevent the taxation of the property fairly within its provisions; and we are unwilling to give any construction to the statute which will aid parties in the evasion of the law."

But we are equally unwilling to extend the operation of the law beyond the limits marked by the legislature, and which practically denies to the individual the right to dispose of his property during his natural lifetime, without paying tribute to the state. In Re Ogsbury, supra, William L. Ogsbury made a deed of trust to the United States Trust Company of New York, wherein it was recited that the deceased was possessed of the personal property therein described, and desired to be relieved of the management of the same, and to secure the benefits of the income during his natural life, and to secure the property to his devisees or next of kin as therein mentioned. After giving directions that the property should be distributed at his death as he might direct by will, or under the laws of this state, the deed describes the property, and the usual agreement with the trust company is set out. Subsequently Ogsbury made a will directing the disposition of his property held under the trust deed; and the court very properly held that the beneficiaries must pay the tax imposed by the state. This case came clearly within the statute; and the court said, with great propriety, that "no opportunity should be given parties to evade the statute, and prevent the taxation of the property fairly within its provisions"; but this language does not apply in a case where the property is fairly without the provisions of the statute, as in the case at bar. Here the title passed absolutely, not upon the death of the grantor, but upon the arrival of a fixed and certain date, whether the grantor lived or died; and the mere fact that there was a reserved right to annul this deed of trust had no bearing upon the character of the transaction so long as it was not exercised. Frederick L. Miller Masury had been in the full enjoyment of the income of this trust for more than two years at the time of the death of his grandfather, and he is to come into the possession of the property composing the trust fund in 1904. His relations to the trust have not been changed in the slightest degree by the death of the grantor, and it cannot now be held that it was "intended to take effect, in possession or enjoyment, at or after such death."

The two trust deeds for the benefit of John M. Masury, bearing date of September 14, 1892, are identical, in their legal aspects, with the one made in favor of Frederick L. Miller Masury, and discussed.

above; and it is therefore unnecessary to give them further consid-
eration.    In the deed of trust bearing date of March 10, 1890, the
trust company is directed "during my lifetime to pay the net avails
thereof to me or to my order," and, "from and after my death, to
pay to my grandson John Miller Masury the said net avails of such
income during his lifetime." This was qualified on the 19th day
of July, 1892, by an order in writing, served on the Brooklyn Trust
Company, to "please pay to John M. Masury, the beneficiary under
the trust deeds executed by me to the Brooklyn Trust Company, one
dated the 11th day of December, 1888, the other dated the 10th day
of March, 1890, all the net income arising from the trust fund
transferred to said company under said deeds of trust until this
authority is revoked by me in writing." By its terms, this trust
deed created a life estate in the trust fund for John M. Masury upon
the death of his grandfather.    Was this instrument changed in its
legal effect by the subsequent order to pay the proceeds of the fund
to his grandson, the beneficiary?    If the order had been to pay
John Smith the proceeds "until this authority is revoked in writ-
ing" (and the mere question of who received the money upon the
order of John W. Masury can have no bearing upon the construction
to be placed upon the trust deed), it must be apparent that John
Miller Masury, the appellant, could have had no rights under the
trust deed until upon the death of his grandfather, when he came
into the life estate.    It has no bearing that he received the pro-
ceeds.    He received this money, not because of any rights under
the trust deed in so far as it related to himself, but upon the order
of his grandfather, who had directed that the proceeds be paid "to
me or to my order" during his lifetime.    The order to pay to his
grandson until the authority should be revoked in writing did not
change the character of the trust deed.    In other words, the trust
deed bearing date of March 10, 1890, was in full force and effect
on the day of the death of John W. Masury, just as it was written
and executed; and up to that time all payments had been made to
John W. Masury or order, and it does not affect the case in the
slightest degree that the order happened to direct payment to the per-
son who was to become the beneficiary upon the death of the grantor.
This being true, the rights of John Miller Masury, under this deed of
trust, did not accrue until the death of John W. Masury, which
brings it within the rule laid down by the court in Re Seaman, 147
N. Y. 69, 41 N. E. 401.    In discussing this same statute, the court,
speaking through Finch, J., say:

"The words of the statute have their full and natural force when applied to
the new case, immediately preceding, of grants or gifts causa mortis.  A grantor
may have conveyed and delivered his deed before 1892, in contemplation of death,
and to take effect upon the happening of that event, or reserving a power of
revocation, as well as the possession or enjoyment, during his lifetime; and the
legislature certainly intended to put such a transfer on the same footing as one
by will.  It is of no consequence that the will was executed before the statute
if the death occurs after; and the same rule was intended to be explicitly ap-
plied to grants causa mortis.  Though the deed precedes the tax law, as the
execution of the will precedes that law in a possible case, yet the transfer in
both instances is to date from the one event which makes it operative and

effective. So much the legislature certainly intended, and so much can be admitted without making the statute operate retrospectively."

We are forced to conclude, therefore, that the trust deeds bearing date of September 14, 1892, in favor of John M. Masury, together with the one bearing date of December 1, 1892, and in favor of Frederick L. Miller Masury, are not liable to taxation under the tax act; such trust deeds having devested the grantor of all title, and becoming operative immediately upon their execution in so far as the beneficial use of the same was involved, and vesting the funds upon given dates, in no wise contingent upon the death of the grantor, in the beneficiaries. We are equally clear in the conclusion that the trust deed bearing date of March 10, 1890, and in favor of John M. Masury, did not vest the beneficiary with any rights of property until upon the death of the grantor, and that it comes within the provisions of the statute, and is subject to the tax ordered to be collected by the order of the surrogate.

So much of the order of the surrogate as relates to the trust deeds known in the papers as County Treasurer's Exhibits 6, 7, and 8 is reversed, and the tax collected thereunder is ordered to be restored to the appellants; while so much of the order as relates to Exhibit 9 is affirmed. All concur.