## In re BOSTWICK'S ESTATE.

(Supreme Court, Appellate Division, First Department. March 10, 1899.)

TRANSFER TAX—PROPERTY SUBJECT.

Certain deeds of trust reserved the right in the grantor to withdraw any of the property from the trustee's possession, and substitute other property, and to alter or terminate the trust, and directed the income to be paid to the grantor during his life, or to such others as he might

direct. *Held*, that the property was properly taxed, on the death of grantor, under Laws 1892, c. 399, imposing a tax on transfers of property intended to take effect in possession or enjoyment at or after the death of the transferror.

Appeal from order of surrogate, New York county.

In the matter of the taxation of property transferred by Jabez A. Bostwick, since deceased. From an order of the surrogate confirming the report of an appraiser assessing a tax, Fanny E. Carstairs and others appeal. Affirmed.

Argued before VAN BRUNT, P. J., and McLAUGHLIN, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

R. E. Robinson, for appellants Carstairs, Morrell, and New York Life Insurance & Trust Co.

James E. Kelly, for appellant Wyatt.

Jabez Holmes, Jr., for respondent comptroller of city of New York.

McLAUGHLIN, J. This is an appeal from an order of the surrogate of the county of New York, confirming the report of an appraiser imposing a transfer tax upon property received under certain trust deeds, executed and delivered to the New York Life Insurance & Trust Company by Jabez A. Bostwick, deceased. Bostwick died in August, 1892, and at the time of his death was a resident of the city of New York. The statute imposing a tax, in force at the time of his death (chapter 399, Laws 1892), provided, among other things, that a tax should be imposed upon the transfer of any property, real or personal, of the value of $500 or over, or of any interest therein or income therefrom, in trust or otherwise, when the transfer was made "by deed, grant, bargain, sale or gift made in contemplation of the death of the grantor, vendor or donor, or intended to take effect in possession or enjoyment at or after such death." The question presented is whether, under the statute, the transfers in question were subject to a tax.

A slight consideration of some of the provisions of the instruments will demonstrate the question is one not difficult of solution. The instruments, six in number, were executed and delivered to the trust company at different times between August 19, 1889, and February 3, 1892, and provided that Bostwick could, at any time prior to his death, withdraw from the possession of the trustee any or all of the property transferred, and substitute other property in its place. They also provided that he could alter, amend, or terminate the trust, in whole or in part, and, in case of a termination, all the property should be returned to him. A further provision was inserted in some of them to the effect that the income from the property, or the greater portion of it, should, during Bostwick's life, if he so desired, be paid by the trustee to him, or to such other person or persons as he might direct. It requires neither argument nor authority to demonstrate that, under the statute referred to, a tax was properly imposed upon the property transferred. By these instruments Bostwick did not, in fact, during his life, dispose of the property at all. After the delivery of the instru-

ments to the trustee, he could again not only acquire the possession of the property, but he could dispose of it just as effectually as he could before. The trustee was little more than bailee or attorney, to hold and manage the property for him. No one, except himself, had any fixed or indefeasible interest in it until his death. In every legal sense, therefore, until then the property was his to enjoy and dispose of in any way he pleased.

In reaching this conclusion, In re Masury's Estate, 25 App. Div. 580, 51 N. Y. Supp. 331, has not escaped our attention. The principle there announced is not in conflict with this view. There the donor had no control over the income, but the same was directed to be paid by the trustee to a person named until he should arrive at the age of 21 years, when the property itself was to be delivered to him. Here the persons named in the different instruments had no absolute, unqualified, or enforceable interest in either the property itself or the income therefrom until Bostwick's death. Until that time he reserved to himself the power to withdraw the same from the possession of the trustee, and he also reserved the right to alter, amend, or terminate the trust, if he so desired. Having reserved to himself this power, it must be held, under every well-recognized rule relating to the transfer of property, that the interest which the persons named in the different instruments had was one which was intended to take effect in possession or enjoyment only at or after Bostwick's death. The transfers were thus brought both within the letter and spirit of the statute.

In Re Green's Estate, 153 N. Y. 223, 47 N. E. 292, by a trust deed a trustee was directed to pay the income upon the property transferred to the donor during her life, and upon her death to divide the property itself among three nieces, their issue or survivors, but no power of revocation whatever was reserved to the donor. The court there held that the transfer was intended to take effect in possession or enjoyment at or after the death of the grantor, within the meaning of the statute, and that a tax was properly imposed. In disposing of that case the court said:

"It is not important to determine whether the trust instrument was made in contemplation of death, or whether, upon the delivery thereof, the remainders vested in the nieces in such a sense as to constitute a gift inter vivos, within the meaning of the cases cited by the learned counsel for the respondent. It may be conceded that, upon the delivery of the trust deed, an interest in remainder vested in the nieces, subject to open and let in the children of one who had died during the lifetime of the donor, according to the terms of the instrument. The real question is whether the remainders which the nieces took under the deed were intended to 'take effect in possession or enjoyment' at or after the death of the donor. Until his death they had no actual possession or right to the possession of the property. Since they could not receive any part of the principal or income till his death, their right of enjoyment was postponed till the happening of that event. Whatever interest they may have had before, the right of possession or enjoyment depended upon the death of the donor. We think it quite clear that the remainders were transferred to the nieces in possession or enjoyment by an instrument intended to take effect for that purpose at or after the death of the donor, and so the case is brought within the terms of the statute. It matters not whether the transfer is by grant or by gift, so long as it was intended to take effect, in possession or enjoyment, at or after the death of

56 N.Y.S.—32

the grantor or donor. The devolution of title is subject to the tax. The death of the donor was the event which made the transfer complete and effective, and secured to the nieces the possession and enjoyment of the property."

The language just quoted, and the principle announced, are quite applicable to the transfers under consideration. Here the death of the donor was the one event which made the transfers of the property complete and effective. Until that time the persons mentioned in the different instruments had no right to the possession, and no legal interest in the property. Until then Bostwick had the right to withdraw the property from the possession of the trustee, and to alter, amend, or terminate the trust itself, if he so desired. The reservation of this power clearly and unmistakably indicated an intention on the part of Bostwick that the transfers were not to take effect in possession or enjoyment until he died.

It follows that a tax was properly imposed, and that the order of the surrogate was right, and should be affirmed, with costs to the respondent. All concur.