329 Mich. 493 (1951)
45 N.W.2d 273
In re RACKHAM'S ESTATE.
CHRISTIAN SCIENCE BENEVOLENT ASSOCIATION
v.
DEPARTMENT OF REVENUE.
Docket No. 21, Calendar No. 44,752.
Supreme Court of Michigan.
Decided January 9, 1951.
Arthur W. Eckman, John R. Peterson, and Harry S. Toy, for petitioners.
Arthur J. Lacy, for Detroit Trust Company and administrators of Rackham estate.
Stephen J. Roth, Attorney General, Edmund E. Shepherd, Solicitor General, T. Carl Holbrook, and Daniel J. O'Hara, Assistants Attorney General, for Department of Revenue.
BOYLES, J.
The sole question here is whether there is any State inheritance tax liability on account of *496 the transfer of property by Mary A. Rackham to the Detroit Trust Company as trustee for 3 Christian Science associations. In the probate court for Wayne county, and again on appeal in the circuit court, orders were entered determining there was no inheritance tax owing to the State. The State department of revenue appeals, and the 3 Christian Science beneficiaries, together with the Detroit Trust Company and the administrators of the estate of Mary A. Rackham, deceased, cross-appeal. In this opinion, in the interest of brevity, Mary A. Rackham and the administrators of her estate will be referred to as the donor, the 3 Christian Science associations as the beneficiaries, the State department of revenue as the State, and the Detroit Trust Company as the trustee. The issue involves a question of law as to the construction of the inheritance tax law. The facts and circumstances are not in dispute.
In 1936, the donor executed and delivered to the trustee a living trust indenture, and on the same date delivered to said trustee money and securities amounting to approximately $1,000,000. Three Christian Science incorporated benevolent organizations were the sole beneficiaries of the principal and income of said trust, the first-named beneficiary to receive 50 per cent. and the other two 25 per cent. each. The indenture empowered the trustee to hold, manage, invest and reinvest the money and securities, to collect the interest, deduct the necessary expenses and the fees otherwise provided in said indenture for the trustee, and to pay quarterly 50 per cent. of the income to the Christian Science Benevolent Association and 25 per cent. quarterly to each of the other 2 beneficiaries. The indenture further provided that upon the death of the donor the trust should terminate and the principal and accumulated income pass absolutely in the same proportions to the same 3 beneficiaries. In the 12th paragraph of *497 said indenture the donor reserved the right to modify, alter or revoke the indenture by complying with certain formalities as to the method of so doing. Said paragraph concludes as follows and the State places much emphasis upon this provision in support of its position:
"No beneficiary of income or principal hereunder shall at any time acquire or have a vested interest in either the income or principal of this trust while the donor shall be in life, or until a vested interest is expressly given by the donor by an instrument supplemental hereto and executed as provided above for modification, alteration or revocation of this agreement."
In paragraph 13 of said indenture the donor reserved the right to live in suitable rooms, including sitting room, bedroom and bath, food, service and accommodations, in any home or institution maintained or operated by any of the beneficiaries, without any charge. Said paragraph concludes with the following statement as to when the indenture should become effective:
"It is understood that this instrument shall not be deemed to become effective until the respective forms of agreement annexed hereto and evidencing the assent of said respective beneficiaries to the provisions of this paragraph are executed and delivered by duly authorized officers, a certificate of whose authority shall be attached to each of said agreements respectively."
The indenture was executed January 27, 1936, and on February 5, 1936, each of the 3 beneficiaries properly executed, acknowledged and delivered to the trustee their several assents to the foregoing provision, whereupon the indenture became effective on that date.
The donor died July 22, 1947. During the period *498 of about 11 years after the indenture became effective the trustee had possession of the property and administered the trust in accordance with its terms. During that time the 3 beneficiaries were paid their proportionate shares of the income from said trust, amounting in all to over $400,000. The donor never exercised the right to modify, alter or revoke said trust or any part of it, never exercised any dominion or control over the trust, never received any of the income or principal after the creation of the trust, never treated the income or principal as her property either beneficially or otherwise, never included either the income or principal as a part of her property, and never paid any income tax upon any of the income from the trust. It is conceded that she never considered either the principal or income of the trust to be her property either beneficially or otherwise. Following the death of the donor in 1947, all of the assets and any accumulation of interest in said trust estate were paid over by the trustee to and distributed among the 3 beneficiaries in accordance with their respective shares and according to the provisions of said indenture. Thereupon the trust was closed.
The State claims an inheritance tax of approximately $130,000 on account of said transfers, relying upon certain provisions of the State inheritance tax law. CL 1948, § 205.201 (Stat Ann 1950 Rev § 7.561), declares that a tax shall be imposed upon the transfer of any property of the value of $100 or over, or of any interest therein or income therefrom, in trust or otherwise, to persons or corporations, not exempt by law in this State from taxation on real or personal property, in certain cases. The first and second cases expressly delineated in said section are when the transfer is by will or by the intestate laws of the State from decedent residents or nonresidents. The State expressly concedes that the instant *499 trust would not be subject to any Michigan inheritance tax under either of the above provisions. There is also a fourth case which is plainly inapplicable to the instant situation. The State claims an inheritance tax on account of certain language in the third case delineated in said section, which is as follows:
"Third, When the transfer is of property made by a resident or by nonresident, when such nonresident's property is within this State, by deed, grant, bargain, sale or gift made in contemplation of the death of the grantor, vendor or donor or intended to take effect, in possession or enjoyment at or after such death. Any transfer of a material part of this property in the nature of a final disposition or distribution thereof made by the decedent within 2 years prior to his death, except in case of a bona fide sale for a fair consideration in money or money's worth, shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this section. Such tax shall also be imposed when any such grantee, vendee or donee becomes beneficially entitled in possession or expectancy to any property or the income thereof by any such transfer, whether made before or after the passage of this act."
The State concedes that under the trust the transfers would not be subject to any inheritance tax as having been made in contemplation of death under the first sentence of the above-quoted third provision, inasmuch as the trust was created and established approximately 11 years prior to the death of the donor. However, the State claims the tax under the concluding sentence of said paragraph:
"Such tax shall also be imposed when any such grantee, vendee or donee becomes beneficially entitled in possession or expectancy to any property or the income thereof by any such transfer, whether made before or after the passage of this act."
*500 In its brief, the State states its position to be that the transfer of the property is subject to an inheritance tax based upon the following grounds: That the donor transferred no valuable property interest until her death and, hence, the transfer of such interest at her death is subject to the tax because CL 1948, § 205.201 (Stat Ann 1950 Rev § 7.561), supra, imposes a tax "upon the transfer of any property, * * * or of any interest therein * * * in trust or otherwise." The State's error in basing the claim of inheritance tax on the above language lies in the fact that it entirely ignores the limitation imposed upon the imposition of such tax by the conclusion of said paragraph, whereby the tax is limited to "the following cases," and by then delineating with particularity the cases in which a tax is imposed, "upon the transfer of any property, * * * or of any interest therein * * * in trust or otherwise."
The State further claims that the transfer of the property in this trust is subject to an inheritance tax because "possession or enjoyment of the trust corpus took effect in possession and enjoyment at the death of the decedent," and, therefore, subject to the tax under the concluding sentence of the third paragraph last-above quoted. In that connection, the basis of the State's claim is that the beneficiaries of this trust did not become "beneficially entitled in possession or expectancy to any property or the income thereof" until at or after the death of the donor. Fundamentally, the foundation upon which the State builds that claim is that the donor during her lifetime retained the right to modify, alter or revoke in whole or in part the trust and the trust indenture, and more particularly bases its claim on the 12th paragraph of the indenture which provides that no beneficiary shall at any time acquire or have a vested *501 interest in either the income or principal of the trust while the donor was in life.
That claim is negatived when considered in the light of the express provisions of the trust indenture in its entirety, as well as the manner in which it has been construed and administered by all of the parties. The indenture definitely assigns to the trustee the property constituting the corpus of the trust. At the time when the trust became effective, in 1936, the trustee became entitled to possession of the property for the benefit of the 3 Christian Science organizations, actually received possession of it at that time, and did not part with the possession of the corpus of the trust until the trust was closed after the death of the donor. Furthermore, under the express terms of the trust, the beneficiaries at its inception became entitled to and were actually given the enjoyment of the income from the trust and received the same periodically during the entire life of the donor. The donor reserved the right to terminate and put to an end the right of the beneficiaries to receive the income, but not the right to recover from the beneficiaries the income which they may already have received in accordance with the express provisions of the trust. The beneficiaries had the right to the income unless and until the donor terminated such right, which the donor never did. Consequently, the beneficiaries had the right to receive the income quarterly during the entire period of the trust. The provision in the trust indenture that no beneficiary should acquire or have a vested interest in the income during the life of the donor must be read and considered in connection with the other provisions of the instrument, and weight must also be given to the manner in which the donor, the trustee and the beneficiaries have construed it. We conclude that it was the intent of the donor, perhaps in an excess of caution, to make sure *502 of the right to modify, alter or revoke the trust without being confronted by the beneficiaries with the claim that they had acquired a vested interest in either the income or the principal of the trust whereby to prevent the donor from exercising the right she had reserved. Obviously, the beneficiaries acquired a "vested" interest in the income as and when they received it from the trustee, although during the lifetime of the donor. Any other construction of the indenture would defeat its plain purpose and intent.
We are not in accord with the claim of the State that the transfer of property was intended to take effect in possession and enjoyment only at or after the death of the donor. The donor parted with both the possession and the enjoyment at the time when the indenture became effective in 1936. The possession was transferred to the trustee in trust for the beneficiaries, was not retained by or ever recalled by the donor. The enjoyment of the trust likewise was exercised by the beneficiaries through the receipt of income from the trustee from the inception of the trust until the death of the donor, without any question being raised. The facts distinguish the intant case from In re Kutsche's Estate, 268 Mich 659, relied upon by the State. In that case the donor retained the income from the trust for her lifetime and the enjoyment of the income did not pass to the beneficiaries until her death.
The closest parallel to the instant case in a Michigan decision is People, ex rel. Attorney General, v. Welch's Estate, 235 Mich 555. Contrary to the State's position here, in that case the Court held that the provisions of the inheritance tax law are not to be extended by implication beyond the clear import of the words used. Decision there was based upon an inheritance tax statute of this State which had adopted in substance the New York inheritance tax *503 law, which had previously been construed by the court of last resort of that State. In the Welch Case, supra, under facts and circumstances strikingly similar to those in the case at bar, this Court said:
"Our legislature adopted in substance the New York inheritance tax law. In the above quoted provisions the wording is practically identical. It is a general though not unyielding rule of construction that when one State adopts a statute of a sister State the presumption obtains that it was adopted with reference to, and in recognition of, previous constructions of its provisions in that State. It is also recognized as a general rule, supported by abundant authority, that the provisions of statutes of this nature, imposing a special tax, are not to be extended by implication beyond the clear import of the words used, since it is the duty of the taxing power to express the intent to impose such special burden in clear and unambiguous language (Eidman v. Martinez, 184 US 578 [22 S Ct 515, 46 L ed 697]; English v. Crenshaw, 120 Tenn 531 [110 SW 210, 17 LRA NS 753]; 37 Cyc, p 1556).
"It is conceded that the trust deed given in 1914 and the instruments which followed were not `made in contemplation of the death of the grantor,' and the controlling issue, therefore, centers on whether, under the language found in the instruments of July 10, 1920, and January 31, 1921, and facts shown, the trust estate as a whole was `intended to take effect, in possession or enjoyment at or after such death,' or before.
"In so far as Mrs. Welch was personally concerned, the trust deed was intended to and did take effect in title to and possession by the trustees of the estate named in it at the time it was given, to hold, conserve and manage the same for the benefit of their cestuis que trustent. By that instrument she transferred, conveyed to and vested in others the legal title and right to possession of the corpus of the trust estate, where it remained until she died, *504 and yet remains if the mandates of the trust are complied with. * * *
"`An estate is vested in possession when there exists a right of present enjoyment, and is vested in interest when there is a present fixed right of future enjoyment.' Butler v. Sherwood. 114 Misc 483 (186 NYS 712).
"Her death made no difference in the rights of the parties as applied to the tax in controversy. * * *
"`The test is always whether the property comes into possession and enjoyment of the transferee upon the death of the transferor. If the death of the transferor makes no difference in the rights of the parties there is no tax.' Gleason & Otis on Inheritance Taxation (4th ed), 876. * * *
"The rule that an estate in possession is an estate in present enjoyment (Eberts v. Fisher, 44 Mich 551) is generally recognized in construing the inheritance tax laws."
See, also, Goodrich v. City National Bank & Trust Company of Battle Creek, 270 Mich 222, where the Court (syllabus) held:
"Settlor's reservation of power to change beneficiary, to amend trust instrument, to revoke trust in whole or in part, to withdraw all or part of the estate and to control investments held, not such a combination of reserved powers as to prevent vesting of title to trust property in trustee and beneficiaries subject to reserved powers which amounted to conditions subsequent."
The mere fact that the Michigan inheritance tax law was adopted from the statute law of New York does not necessarily require that decision in this Court be controlled by the prior construction placed upon the statute law of New York by its courts. However, such decisions are of importance and must be given weight in construing the statute law in this State. In the absence of an expression to the contrary, the legislature in passing the statute in this *505 State will be considered to have adopted it with the construction so given. Speaking of its inheritance tax law, the supreme court of New York, appellate division, prior to the enactment of the Michigan inheritance tax law, held:
"Where property is transferred to a trustee to receive and pay the income to a beneficiary, and at a specified future date to pay over to him the principal, or, in case of his death, to pay it over to other designated persons, the fact that the grantor reserves the power to revoke or annul the trust during his lifetime, for the mere purpose, so far as appears, of protecting the beneficiary if occasion should arise, does not render the transfer one `intended to take effect in possession or enjoyment at or after the death' of the grantor; and upon the latter's death prior to the date designated for absolute payment over to the beneficiary, without having annulled the transfer, it is not to be included in an appraisal of his estate for purposes of taxation, under tax law, § 220." In re Taxation of Masury's Estate (syllabus NYS), 28 App Div 580 (51 NYS 331); affirmed without opinion, 159 NY 532 (53 NE 1127).
We agree with the opinion and order of the circuit judge that the State is not entitled to the inheritance tax. Consequently, it is not necessary to discuss other reasons urged by cross-appellants as additional grounds on which the probate court and the circuit court might have based the determination that the State was not entitled to any inheritance tax.
Affirmed and remanded for such further proceedings as may be necessary. No costs, a public question being involved.
REID, C.J., and NORTH, DETHMERS, BUTZEL, CARR, BUSHNELL, and SHARPE, JJ., concurred.