In the Matter of the Transfer Tax upon the Estate of JOHN M. BOWERS, Deceased.

WILLIAM C. BOWERS and Others, as Executors, etc., of JOHN M. BOWERS, Deceased, and Others, Appellants; THE COMPTROLLER OF THE STATE OF NEW YORK, Respondent.

First Department, March 4, 1921.

Taxation — transfer tax — trust deeds permitting investment of proceeds of estate with approval of trustor — reservation by trustor of privilege, with approval of trustee, of altering, amending or extending terms of trust — failure of trustor to exercise right during lifetime — property not subject to transfer tax.

Trust deeds by which the trustor conveys property to trustees to have and to hold and to invest the same and to receive the income, rents, issues and profits arising therefrom, pass title to such property immediately to the

trustees so that the property is not subject to a transfer tax on the death of the trustor, although the trust deeds provide that the trustor may approve investments by the trustees of the trust estate, and further, that the trustor may at any time and from time to time, with the approval of the trustees, alter, amend or extend all or any of the terms and conditions of the trust, and may confer new powers on the trustees, where it appears that the trustor made no changes in the disposition of the trust estate during his lifetime under the reservation, except to substantially increase the corpus of the trust fund by subsequent donations.

APPEAL by William C. Bowers and others from an order of the Surrogate's Court of the county of New York, entered in said surrogate's office on the 19th day of June, 1920, as resettled by an order of said surrogate entered in said surrogate's office on the 25th day of September, 1920, in so far as said order on appeal from a prior order provides that the property transferred by John M. Bowers by certain trust deeds is subject to a transfer tax.

*Francis M. Scott* of counsel [*Paul E. Whitten* with him on the brief; *Scott, Gerard & Bowers*, attorneys for the executors and others; *Paul E. Whitten*, attorney for the trustees], for the appellants.

*Schuyler C. Carlton* of counsel [*Lafayette B. Gleason*, attorney], for the respondent.

PAGE, J.:

While the notice of appeal related to the taxation of property transferred by seven trust deeds, the appellants only claim that the order was erroneous as to four.

*First.* The trust created for the benefit of Mary Bowers Coppell by deed dated July 27, 1908.

*Second.* The trust created for the benefit of Martha Dandridge Bowers by deed dated July 27, 1908.

*Third.* The trust created for the benefit of Mary S. Bowers, Clara Collins and William C. Bowers, 2nd, by deed dated November 7, 1910.

*Fourth.* The trust created for the benefit of Spotswood D. Bowers by deed dated September 23, 1916.

The only question presented for determination is whether the gifts to the trustees should be considered as transfers which did not become absolute until the death of the testator.

First Department, March, 1921.          [Vol. 195.

The first three trust deeds have identical clauses and the fourth is substantially the same except as hereinafter noted. The first deed provides: John M. Bowers pays, assigns, transfers and sets over to his brother William C. Bowers and his son-in-law Arthur Coppell certain securities and cash:

" To Have And To Hold for and during the term of the natural life of Mary Bowers Coppell, daughter of said party of the first part, upon the special trust and confidence, to have and to hold and invest· the same, and to receive the income, rents, issues and profits arising therefrom, and to apply the same to the use, maintenance and support of said Mary Bowers Coppell, and upon her death to pay over the principal and any accumulations of income to such person or persons and in such shares and lawful estates as said Mary Bowers Coppell may nominate and appoint by her Last Will and Testament or other written instrument, and in default of same to pay and transfer the same to her issue *per stirpes*, and in default of such issue, to pay and transfer the same to Martha D. Bowers and William C. Bowers, children of the party of the first part in equal shares, the issue of either then deceased taking its parent's share by representation, and if one be then deceased leaving no issue, the survivor to take the whole, and if both be then deceased, only one leaving issue, such issue to take the whole."

· There can be no question that by the terms of the foregoing provision John M. Bowers vested in the trustees the property thereby transferred with no right of reversion in himself. It has been stipulated that at the time of John M. Bowers' death Mary Bowers Coppell had the following children: Sarah Bowers Coppell, born December 31, 1901; Helen Bowers Coppell, born December 28, 1904, and Mary Bowers Coppell, born May 9, 1909. Therefore, the remainder vested in them, share and share alike, subject to be reduced by the birth of other children or divested by death. In the case of death of all substitutional remaindermen are provided. The fact that the life tenant is given the right of appointment by will or other written instrument does not prevent the present vesting of the remainder. (Real Prop. Law, § 41; *Matter of Haggerty*, 128 App. Div. 479, 481; affd., 194 N. Y. 550; *Crackanthorpe* v. *Sickles*, 156 App. Div. 753, 755.) Mary Bowers Coppell

became entitled to the immediate enjoyment of the income, and no right of reversion to John M. Bowers was reserved.

It is claimed, however, that subsequent clauses of the deed show that this was not a completed gift *inter vivos*.

*First.* " It is further expressly agreed that the parties of the second part [the trustees] may invest the trust estate and the proceeds thereof in real estate, bonds secured by mortgage in Greater New York, not exceeding two-thirds of the appraised value, or in bonds of railroads secured by mortgage, and in such bonds, stocks or other securities as are allowed by law for Savings Bank investments, and further, in any securities whatsoever which, during the lifetime of the party of the first part, may be approved by him."

In my opinion, there is nothing in this clause of the deed that tends to qualify or cut down the absolute character of the gift. The only right reserved is that if the trustees, during the lifetime of the grantor, shall desire to invest the corpus of the trust in securities more hazardous than those theretofore specified, they must first obtain his approval. This provision is not for the benefit of the grantor, nor a limitation upon the grant, but a safeguard for the protection and benefit of the trust estate and to insure the preservation of the fund for the use and purposes of the grant and in the interest of the beneficiary of the trust.

*Second.* " It is further expressly agreed that the party of the first part may at any time, and from time to time, with the approval of either one of the said parties of the second part, or the survivor of them, or any one of their or his successors or successor, alter, amend or extend all or any of the terms or conditions of this instrument, and may, with like consent, confer new powers upon the parties of the second part concerning the administration of their trust."

It is contended that this gave to the grantor the right at any time to change the trust in any way that he saw fit, even to revoking the deed and revesting the property in himself and by the possibility of the use of this power to retain the control of the property in himself by reason of the relationship to him of the trustees, and that as the property set aside in these trust deeds was only a comparatively small portion of the estate, this gave to him a power of coercion

over the wills of the trustees. The only use that was made of this power by John M. Bowers in his lifetime was to substantially increase the corpus of the trust fund by subsequent donations. Whether this clause reserved the right to entirely abrogate the trust, is to my mind doubtful. When he wished to reserve that right in the deed for the benefit of Spotswood D. Bowers he expressly provided: " and may with like consent wholly cancel and destroy this trust and receive back the trust estate."

But waiving that question and treating all the four trust deeds as though that right were expressly reserved, he did not exercise that right in his lifetime, and as was said in *Matter of Masury* (28 App. Div. 580, 584; affd., 159 N. Y. 532): " If we are to get at the intention of the grantor from the language used in' raising the trust, then there can be no doubt that John W. Masury intended this deed of trust to become of full effect whether he lived or died, and the detail with which he provided for the disposal of the property in the event of the death of his grandson precludes the idea that he had any other motive in retaining the right to annul the deed than a prudent caution would suggest. It had no bearing upon the intention. * * * There is nothing to indicate that the grantor had any intention of making use of this right except to protect the beneficiary should such action become necessary during his lifetime; and the fact that he did not make use of it up to the time of his death precludes the presumption that he would have done so at any time. At least the presumption cannot be raised to show an intention directly contrary to that expressed in the deed of trust."

And the court held that as the beneficiary had been in the enjoyment of the income from the date of the deed of trust, the title passed to the trustee, and it constituted no part of the property of John W. Masury at the time of his death and should not have been included in an appraisal of his estate for the purpose of taxation under the Transfer Tax Act.

The case under consideration is well within the limits of the *Masury* case, of which the Court of Appeals in *Matter of Bostwick* (160 N. Y. 489, 494) stated: " The limit was then reached, beyond which the courts could not go without emasculating the provisions of the statute. We thought there

was some reason in the facts of the *Masury* case for finding an intention in the donor to make an absolute transfer of property during his life, which the mere reservation of a power to revoke was, of itself, insufficient to negative."

The facts that were persuasive in the *Masury* case are present in the instant case. The trustees took possession of the property and managed and controlled it; the beneficiaries received the income thereof from the date of the deeds, and the condition obtained unchanged (except increased in amount) and unimpaired at the time of the grantor's death. This case, therefore, is clearly distinguishable from the *Bostwick Case (supra)* in which the court said: " Bostwick did not, in fact, during his lifetime, dispose of the property affected by these trust deeds; inasmuch as, after their delivery to the trustee, he not only was entitled at any time to revest himself with the ownership of the property, but he continued to be able, in some cases, to enjoy it and, in all cases, practically, to manage and to dispose of it, as effectually as he might previously have done." The instant case comes clearly within the closing words of the opinion in the *Bostwick* case: " If a person intends, in good faith, to make an absolute gift of his property during his life to others and thereby to make a provision for them, which shall not be contingent as to its possession or enjoyment upon the event of his death, there is no inhibition in the act in that respect. The intent of the law is plain and it is the duty of the courts to give that construction to its provisions, which will effectuate the legislative purpose; while preserving, in all its integrity, the absolute right of every person to transfer his property during his lifetime, with such rights of enjoyment in the transferee, as the donor can give."

On the argument the learned counsel for the Comptroller claimed that in construing these deeds we should consider the possibility of all the persons to whom the remainder would go dying in a common disaster, in which event he claims that the property would revert to the estate of John M. Bowers and pass under his will. For this proposition he cites *Matter of Spingarn* (175 App. Div. 806); *Matter of Hutton* (176 id. 217); *Matter of Steinwender* (Id. 517). In all of these cases trusts were created by a will; therefore, the corpus of the

trust was subject to a transfer tax and the sole question to be determined was the rate of the tax, and we held that as the statute required that the tax should be fixed at the highest rate at which it could be taxed in any contingency, we were required to assume the possibility of all the remaindermen dying in a common disaster, in which event the trust property would go to collaterals and be subject to a five per cent tax. These cases have no bearing on this case, where the question is whether the title and right of possession and enjoyment passed during the lifetime of the grantor, or whether it was postponed to take effect upon the death of the grantor.

The order, in so far as it relates to the property the subject of the four deeds referred to in this opinion, should be reversed and the matter remitted to the Surrogate's Court for appropriate proceedings to eliminate that property from the estate of John M. Bowers for the purpose of assessing a transfer tax thereon.

Clarke, P. J., Laughlin, Smith and Merrell, JJ., concur.

Order reversed so far as indicated in opinion and the matter remitted to the Surrogate's Court for further proceedings, in accordance with opinion. Settle order on notice.