Matter of the Estate of ANDREW CARNEGIE, Deceased.

(Surrogate's Court, New York County, November, 1921.)

*Transfer tax — no deduction for federal estate tax — tenancy by entirety taxable at one-half value — pensions created by unrevoked deed of trust not taxable — Decedent Estate Law, § 17.*

APPEALS from order fixing transfer tax.

Root, Clark, Buckner & Howland, for executor.

Lafayette B. Gleason (Schuyler C. Carlton, of counsel), for state tax commission.

FOLEY, S. Cross-appeals have been taken by the estate and the state tax commission from the order fixing transfer tax. The executor appeals on the ground that the federal estate tax has not been allowed by the appraiser as a deduction. The decision of the Court of Appeals in *Matter of Sherman,* 222 N. Y. 540, sustains the action of the appraiser and the appeal is denied.

The state tax commission appeals upon the following grounds, first, that the transfers of certain parcels of real property held by the decedent and his wife as tenants by the entirety should be taxed; second, that the failure to impose a tax on the value of the life

interests in the pension funds established by Mr. Carnegie was error; and third, that the method adopted by the appraiser in his computation of the amounts passing to certain charitable corporations and to the widow was erroneous.

The appeal of the state upon the first ground is sustained, and the order will be modified so as to provide for a tax upon the value of one-half of the real estate involved.

Andrew Carnegie died August 11, 1919. In 1898 and 1899 various parcels of real estate in New York city were conveyed to him and his wife, thereby creating in them a tenancy by the entirety. *Bertels* v. *Nunan,* 92 N. Y. 152; *Hiles* v. *Fisher,* 144 id. 306. Until the amendment of section 220, subdivision 7, of the Tax Law, made by chapter 323 of the Laws of 1916, the transfer of this form of property was free from tax. By that statute the tax was specifically imposed upon the transfer to the survivor in the following language: '' the right of the surviving tenant by the 'entirety  *  *  *  to the immediate ownership or possession and enjoyment of such property shall be deemed a transfer taxable under the provisions of this chapter in the same manner as though the whole property to which such transfer relates belonged absolutely to the deceased tenant by the entirety  *  *  *.''

The executor contends that the surviving widow takes under the original conveyance by which the tenancy was created and that no transfer took place at the death of the decedent. The authorities in this state have greatly modified the attributes of the common law tenancy by the entirety. By reason of the enactment of the Married Woman's Property Acts by our legislature, the husband and wife are now tenants in common with equal rights in the rents and profits and with the right of survivorship. *Matter of Goodrich* v. *Village of Otego,* 216 N. Y. 112, 117; *Hiles* v.

*Fisher, supra; Grosser* v. *City of Rochester,* 148 N. Y. 235. The respective rights of the husband and wife in this form of title and the taxability of the transfer in the estate of the·spouse first dying are clearly set forth by Mr. Justice Putnam in *Matter of Moebus,* 178 App. Div. 709. The facts there were exactly the same as those in Mr. Carnegie's estate, viz., creation of the tenancy before the passage of the act of 1916 and death after its enactment. The contention of the executor that the decisions of the first department differ from those of the second department in *Matter of Moebus* is unfounded. In *Matter of Horler,* 180 App. Div. 608, the court held that a similar transfer in 1915 was free from tax, but the death there occurred previous to the amendment of 1916, which enlarged the scope of section 220, subdivision 7, and specifically included real estate and other tangible property. In his opinion Mr. Justice Shearn pointed out that where the death occurred after that amendment the estate would be taxable, for he states: " The situation presented in this case is one that cannot arise in the future, for the Legislature of 1916 defined such a succession of interest as occurred on the death of Mary Horler to be a taxable transfer. Counsel for the state comptroller cites *Matter of Moebus,* 178 App. Div. 709; but while that case dealt with a tenancy by the entirety and held the succession taxable, the decision was based, and necessarily so, on the 1916 amendment (Chap. 323), which was in effect prior to the death of the cotenant.''

Whether the transfer to the survivor be regarded as the *jus accrescendi,* or the termination of the right of the deceased cotenant to one-half the rents and profits, or the elimination of his interest in the entire fund, a succession of interest does take place at the death of the first cotenant and the legislature has, within its powers of taxation, expressly declared that

this transfer shall be assessed. *Matter of Dolbeer,* 226 N. Y. 623; *Matter of Orvis,* 223 id. 1, 7; *Matter of White,* 208 id. 64, 67.

*Second.* In the year 1901 Mr. Carnegie, by letter, transferred to the Home Trust Company as trustee securities of the value of $1,250,000, and directed that out of the income pensions be paid to certain persons. Additional amounts were subsequently added to this fund, and in 1911 Mr. Carnegie executed a trust deed covering the *corpus* of the trust, which amounted at that time to $3,250,000. At the time of his death, by further contributions, this fund amounted to $4,250,000. The provisions of the deed were that the income should be used to pay the pensions for the lives of the pensioners, that any surplus income be credited to the account of Mr. Carnegie, that as the pensioners died, the trustee should from time to time transfer the trust securities to the grantor or his estate. The deed also reserved to the grantor the right of revocation, and provided that he might add to or cancel the pensions. At the time of his death over 400 pensioners of this fund were living, classified as follows:

1. Veterans of the Military Telegraph Corps and their widows. These veterans had served in the Civil War but not as part of the military forces of the United States, and were excluded from the benefits of the government pension system. Mr. Carnegie had served with them.

2. Retired employees of the Pennsylvania railroad (Pittsburgh division).

3. Retired teachers ineligible for pensions under Carnegie foundation.

4. Old friends, servants and other deserving persons.

The average pension was comparatively small in amount.

No dispute arises as to the taxation of the surplus income due Mr. Carnegie or the estate, nor to the

remainder of the *corpus* of the trust. The only question in dispute is the taxability of the life interest of the pensioners. While the deed of trust reserved to the grantor the power of revocation, there is abundant evidence in the record there was no intention on his part to exercise that right. In any event it was not exercised by him in his lifetime. The surrounding circumstances show that the grant of these pensions constituted an absolute gift during his life to the beneficiaries. Mr. Carnegie's death in no way affected the rights of the beneficiaries to the pensions. No tax, therefore, can be imposed upon the passing of the particular fund in dispute. The reservation of the power of revocation does not affect the character of the gift. *Matter of Masury,* 28 App. Div. 580; affd., 159 N. Y. 532; *Matter of Bowers,* 195 App. Div. 548; affd., 231 N. Y. 613; *Matter of Cochrane,* 117 Misc. Rep. 18; *Matter of Wing,* opinion of Cohalan, S., N. Y. L. J. Nov. 9, 1921. The appeal of the state tax commission on this ground is denied.

*Third.* The remaining ground of appeal of the state tax commission relating to the appraiser's method of computation and valuation of the transfers to the Carnegie Corporation of New York and to the widow must be overruled. By reason of the fact that Mr. Carnegie left surviving a wife and daughter the terms of the will violated the provisions of section 17, Decedent Estate Law. The total net estate was approximately $23,200,000. The legacy to the Carnegie Corporation, if the will was valid, amounted to approximately $16,000,000. That section of the Decedent Estate Law provides as follows: " No person having a husband, wife, child or parent, shall, by his or her last will and testament, devise or bequeath to any benevolent, charitable, literary, scientific, religious or missionary society, association or corporation, in trust or otherwise, more than one-half part of his or her estate, after the payment of his or her debts, and such

devise or bequest shall be valid to the extent of one-half, and no more." The appraiser properly included the value of the foreign real estate in the gross value of the estate, and the appraiser then deducted from this total the amount of the debts. *Decker* v. *Vreeland,* 220 N. Y. 326, 336; *Matter of Moderno,* 5 Dem. 288. With certain undisputed adjustments he fixed the value of the transfer to the Carnegie Corporation at one-half the net estate, $10,673,418.67. Article tenth of the will provides that in case any of the bequests should prove ineffectual or contrary to law, the property invalidly bequeathed should go to the widow. The Carnegie Corporation, by operation of law and under the terms of the will, became a general legatee and Mrs. Carnegie the residuary legatee. The state's contention, therefore, that the administration expenses, amounting to $750,000, must be deducted in addition to the debts in arriving at her share, must be overruled. *Matter of Brooklyn Trust Co.,* 179 App. Div. 262; *Matter of Allen,* 111 Misc. Rep. 93, 131; *Decker* v. *Vreeland,* 220 N. Y. 326, 336; *Matter of Colburn,* 92 Misc. Rep. 700. This section provides only for the deduction of debts. The incidental question raised under this ground of appeal, that the income earned on the amount of the legacy to the Carnegie Corporation during the first year of administration of this estate should be included, must also be determined in favor of the estate. Although this income ultimately increased the share of Mrs. Carnegie, the value of the transfers must be determined as of the date of death (Tax Law, §§ 222, 243; *Matter of Penfold,* 216 N. Y. 163), and any subsequent accruals must be disregarded.

The report will be remitted to a transfer tax appraiser for the purpose of fixing the tax on the real estate owned by decedent and his wife as tenants by the entirety. Submit order accordingly on notice.

Ordered accordingly.