In the Matter of the Transfer Tax upon the Estate of ANDREW CARNEGIE, Deceased.

HOME TRUST COMPANY, as Executor, etc., of ANDREW CARNEGIE, Deceased, and LOUISE W. CARNEGIE, Appellants, Respondents; STATE TAX COMMISSION, Respondent, Appellant.

First Department, November 3, 1922.

Taxation — transfer tax — pension trust fund with power reserved to change list of pensioners — subsequent trust for same purpose with power of revocation reserved — power of revocation never exercised — transfer not taxable — more than one-half of estate given to charities — legacies to charities computed under Decedent Estate Law, § 17, by deducting debts of estate and dividing remainder by two — expenses of administration not to be deducted in determining one-half — estate held by entirety not subject to transfer tax — Federal estate tax not to be deducted in determining value of property subject to transfer tax.

Money transferred to a trust fund is not subject to a transfer tax on the death of the creator of the fund, where it appears that the trust was created for the benefit of certain pensioners with power on the part of the creator to change the list of pensioners from time to time and that a subsequent trust for the same purpose which transferred additional property to the same trustee contained a power of revocation which was never exercised during the lifetime of the testator, even to the extent of canceling a pension.

The mere reservation of the power to revoke did not render the transfer taxable, and the fact that the testator did not make use of it up to the time of his death precludes the presumption that he would have done so at any time.

Accordingly, both the possession and enjoyment of the property passed to others during the lifetime of the testator and did not pass to them upon his death so as to subject the principal of the trust to the transfer tax.

For the purpose of determining under section 17 of the Decedent Estate Law how much of an estate shall be subject to a transfer tax where more than one-half thereof is given by the testator to charities, there must be deducted from the entire estate all the debts thereof, and the remainder divided by two. The expenses of administration, however, are not to be deducted from the entire estate before dividing by two, but are to be paid from the share passing to the residuary legatee.

Real property held by a husband and wife as tenants by the entirety prior to 1916 is not subject to a transfer tax on the death of the husband.

The Federal estate tax should not be deducted in determining the value of the property of a decedent subject to the transfer tax.

CROSS-APPEALS by Home Trust Company and Louise W. Carnegie and by the State Tax Commission from an order of the Surrogate's Court of the county of New York, entered in said Surrogate's Court on the 14th day of February, 1922, affirming the order entered in said Surrogate's Court on the 20th day of January, 1922, fixing and assessing a tax upon the transfer of the property of the deceased.

*Root, Clark, Buckner & Howland* [*Elihu Root, Jr.,* of counsel], for the appellants, respondents.

*Lafayette B. Gleason* [*John B. Gleason* of counsel], for the respondent, appellant, State Tax Commission.

PAGE, J.:

The proceeding is for the assessment of a transfer tax upon the estate of Andrew Carnegie, deceased. Andrew Carnegie died August 11, 1919, a resident of New York county. Letters testamentary were granted to the Home Trust Company. Transfer tax proceedings were instituted and such proceedings were had that a final order was made by the surrogate on February 14, 1922, in all respects affirming the appraiser's *pro forma* taxing order of January 20, 1922. The State Tax Commission appeals from the order on two grounds: (1) The excluding from the taxable estate of certain interests in a trust fund created by deed, the trust being known as the "pension trust fund;" (2) the method of computing the legacies to charitable corporations. The executor and Louise W. Carnegie appeal from the order on two grounds: (1) The inclusion in the property subject to the transfer tax of certain real estate owned by the decedent and his wife as tenants by the entirety; (2) the refusal of the surrogate to deduct the Federal estate tax paid by the executor. We will consider these various grounds of appeal in the order in which they are stated.

1. The pension trust fund. It is the contention of the State Tax Commission that Mr. Carnegie reserved to himself the power of revocation of the pension to the individuals named on the lists of pensioners that he from time to time gave to the trustee; therefore, no fixed right to the pension vested in the beneficiaries until his death; therefore, the same did not vest in absolute possession and enjoyment before his death and were taxable under the Transfer Tax Law of this State. (See Tax Law, § 220, as amd. by Laws of 1919, chap. 626.)*

The pension trust fund under consideration in this case was a very small part of his estate which he disposed of for beneficent purposes prior to his death. Mr. Carnegie retired from business in 1901, and from that time to the time of his death employed himself in giving away the fortune which he had accumulated, that it might be devoted to the public welfare during his lifetime. In these years he thus disposed of $350,000,000 of his estate, leaving in his possession at the time of his death a net estate of about $23,000,000, of which one-half was by his will given to charitable institutions. In thus disposing of the bulk of his estate

_____

* Since amd. by Laws of 1922, chap. 430.— [REP.

it was Mr. Carnegie's intention wholly to divest himself of any property which he gave away for various purposes. He did not retain any interests in such property or reserve to himself the power to revoke the trust, and thus recall the property to his own use, after he had once appropriated it to the objects of his bounty.

When Mr. Carnegie retired from business he frequently expressed the desire to make provision for certain persons whom he deemed worthy and in need of financial assistance. These persons were largely friends, former employees and others of advanced age no longer able to work. He sought means whereby he could secure for these persons the payment of small sums regularly for their lives. As the list of these persons increased in number, he realized that if he personally made these disbursements, his death would terminate such payments and leave these persons unprovided for during the remainder of their lives; consequently, he established the "pension trust fund," the terms of which appear from the following letter:

"*December* 5, 1901.

" DEAR MR. FRANKS:

" I have transferred to the Home Trust Company $1,250,000 of United States Steel Corporation Bonds. From the interest derived from these bonds you are hereby instructed to make payments to all beneficiaries on my Pension List and also the Christmas gifts each year as per approved list hereto attached.

" I may add to or change from time to time this list, and in such case I will give you the necessary instructions in writing.

" At the end of each year if you have any surplus interest after making all payments as above, you are directed to transfer same to me crediting my interest account.

" Yours very truly,

" ANDREW CARNEGIE. .

" Mr. R. A. FRANKS, President

        " Home Trust Company,

                " Hoboken, N. J."

On December 7, 1901, $1,250,000 bonds of the United States Steel Corporation were transferred to the Home Trust Company, the income of which was applied to the payment of pensions listed by him. In the following years Mr. Carnegie constantly added more names to the list of pensioners. This steadily demanded a larger income. To provide this increased income Mr. Carnegie transferred bonds of the United States Steel Corporation to the Home Trust Company as trustee in the following amounts: In 1902, $750,000; 1905, $500,000; 1907, $500,000; 1908, $250,000; 1912, $200,000; 1913, $400,000; 1914, $400,000. Thus the par

First Department, November, 1922.       [Vol. 203

value of the bonds of the United States Steel Corporation held by the Home Trust Company in 1914 amounted to $4,250,000, and so remained until the time of Mr. Carnegie's death. All these transfers were made on the books of the steel corporation and the bonds were registered in the name of the trustee.

During the period from 1901 to 1910 the trust fund, which at the latter date amounted to $3,250,000, was held pursuant to the letter of December 5, 1901. In 1911 Mr. Carnegie executed a formal trust deed drafted by an attorney at law. The $3,250,000 par value of bonds mentioned in this deed were the same that had theretofore been transferred to the Home Trust Company under the letter of December 5, 1901. No new transfer of bonds was made at the time this deed was executed. The provisions of this trust deed were that the trustee was to collect the interest on the said bonds and

" (2) From the interest thus received to pay to the persons named in the Pension Lists signed by me on the seventh day of December, nineteen hundred and one, the twenty-sixth day of April, nineteen hundred and nine and the nineteenth day of December, nineteen hundred and ten respectively, as said lists have been altered and changed by me (by revoking the payments to any of the persons therein named) from time to time, the amounts mentioned therein during their natural lives, unless such payments, or any of them, are revoked by me previous to my death.

" I hereby expressly reserve to myself the right and power to change, add to, alter or cancel said lists and to substitute new and other pension lists in lieu thereof, and in any or either of said events, you are to pay said interest to the persons named in such changed, enlarged, altered or substituted lists.

" (3) To pay over the balance (if any) of said interest yearly to me. * * *

" (4) * * * To transfer, assign and set over (if either of said events happen during my lifetime) to me, if required by me, yearly or at such other periods as I may elect, as many of said bonds as may not be needed to produce the payments mentioned in said lists * * *.

" I hereby expressly reserve to myself the right and power, at any time, to revoke by writing under my hand, the power, authority and direction above given."

A second trust deed was executed by Mr. Carnegie on November 17, 1913, evidencing the transfer to the trustee of the $600,000 in 1912 and June, 1913. This deed was the same as the first except the 1st paragraph of section 2 thereof, which reads as follows:

" (2) From the interest thus received to pay to the persons

named in the. Pension Lists signed by me on the twenty-sixth day of April, nineteen hundred and nine, and on the thirtieth day of January, nineteen hundred and thirteen, the amounts mentioned therein during their natural lives, unless such payments or any of them, are revoked by me previous to my death."

When the $400,000 of bonds were transferred in 1914, no new deed was executed. At the time of Mr. Carnegie's death there were over four hundred pensioners living, the great majority of whom received annually sums of from $120 to $300; eighty-four received from $300 to $600; thirty-one received from $600 to $1,000; only twenty-five received more than $1,000. They are classified: (1) Veterans of the United States Military Telegraph Corps of the Civil War and their widows. This corps was organized by Mr. Carnegie in 1861, and he served with it. They were not included in the government pension system. Mr. Carnegie provided $12 a month, the equivalent of the Civil War pension, for their lives, or until such time as the government should provide for them, which it never did; (2) retired employees of the Pittsburgh division of the Pennsylvania railroad and their widows. These old men were employed on that division when Mr. Carnegie was superintendent of it. These pensions were $20 per month; (3) retired teachers who for technical reasons could not take advantage of Mr. Carnegie's special foundation for teachers; (4) old friends, servants and other deserving persons.

Of the capital of the pension trust fund about $1,350,000 represented the aggregate value of the pensioners' life estates at the time of Mr. Carnegie's death, $2,900,000 represented the value of the remainder interest vested in the decedent. It is conceded that the latter sum is taxable. The controversy relates to the taxability of the $1,325,000 held for the benefit of the pensioners.

As we have stated above, $3,250,000 of the bonds were held in the pension trust fund under the letter of December 5, 1901, in which no reservation of a right to revoke was contained. The only power reserved to the decedent was to " add to or change " the list of pensioners. This power was exercised merely to add to the list. The decedent by letters to various pensioners frequently referred to the pension as for the life of the beneficiary. Mr. Carnegie not alone added very largely to the list but increased the corpus of the trust fund. Although a power " to change, add to, alter or cancel said lists and to substitute new and other pension lists in lieu thereof " and also " at any time to revoke by writing under my hand " was reserved in the subsequent deeds, this power would at most attach only to such portion of the trust fund as was transferred under the terms and conditions of those deeds,

and to the beneficiaries added to the list thereafter, for the pensions granted prior to 1911 were irrevocable and they could not thereafter be made revocable by a deed signed by the grantor alone. A trust irrevocable when made can only be revoked by the grantor with the consent of the beneficiary. (*Ludlam* v. *Ludlam,* 194 App. Div. 411; *Garner* v. *Germania Life Ins. Co.,* 110 N. Y. 266.) The mere reservation of the power to revoke does not render the transfer taxable. There is no evidence before us that Mr. Carnegie ever exercised the power of canceling a pension, or in any manner exercised the powers reserved in the deed. There is nothing to show the intention of the grantor to exercise this power. It was undoubtedly written in the deed by the attorney as a prudent precaution, and the fact that Mr. Carnegie " did not make use of it up to the time of his death precludes the presumption that he would have done so at any time." (*Matter of Masury,* 28 App. Div. 580, 585; affd., 159 N. Y. 532; *Matter of Bowers,* 195 App. Div. 548, 552; affd., 231 N. Y. 613.) The title and possession of the fund vested in the trustee. On his name being placed upon the list of beneficiaries, the pensioner entered upon the enjoyment of the portion of the income allotted to him. Therefore, both possession and enjoyment of the property passed to others during the lifetime of the grantor and did not pass to them upon his death. (*Matter of Masury, supra; Matter of Bowers, supra; Matter of Voorhees,* 200 App. Div. 259.) The learned surrogate, therefore, properly held these pensions not taxable. (117 Misc. Rep. 806.)

2. The State Tax Commission contends that the method adopted by the surrogate of computing the legacies to charitable corporations was erroneous. By his will Mr. Carnegie made gifts aggregating $750,000 to seven charities, and gave his entire residuary estate to the Carnegie Corporation, a charitable corporation. The 10th article of the will provided that in case any bequest should be ineffectual or invalid by reason of his death occurring within two months of the execution of the will, or by reason of his having given more than one-half to charities, the excess should go to his wife absolutely. The gifts to charities were more than one-half of the estate. Concededly, section 17 of the Decedent Estate Law applies. The surrogate deducted the debts of the testator from the principal of the estate and divided the remainder into two equal parts. The counsel for the State Tax Commission claims that the expenses of administration should have been also deducted before the division was made. By the express terms of section 17 the estate is to be estimated after the payment of the testator's debts, and the devise or bequest is to be valid to the extent of one-half of the remaining sum. Had the Legislature

intended that the expenses of administration should also be deducted, it would have so provided. The argument advanced by counsel that the administration expenses are a claim against the estate which must be satisfied before distribution, and hence are a debt, does not lead to the conclusion that it is a debt of the testator. It has been expressly held that the administration expenses are not to be deducted in ascertaining the one-half interest, but that the administration expenses fall on the residuary legatee. (*Matter of Brooklyn Trust Co.*, 179 App. Div. 262.) This disposes of the appeals of the State Tax Commission.

The executor and Mrs. Carnegie appeal (1) from the imposition of the tax upon the real estate held by Mr. and Mrs. Carnegie as tenants by the entirety. This question has been determined by the Court of Appeals since the decision of the surrogate herein, holding such an estate not taxable. (*Matter of Lyon*, 233 N. Y. 208.) This case overrules *Matter of Moebus* (178 App. Div. 709), upon which the surrogate relied. To this extent the order must be modified.

(2) The contention that the Federal estate tax should be deducted in determining the value of the property transferred has been determined adversely to the appellants in this State. (*Matter of Gihon*, 169 N. Y. 443; *Matter of Sherman*, 222 id. 540.) However persuasive may be the reasoning for the adoption of a different rule and the weight of the authorities cited by counsel from other States, we are compelled to follow the decision of the Court of Appeals, as was the learned surrogate.

The order should be modified by deducting the amount of the tax assessed upon the real estate which was held by the entirety, and as modified affirmed, without costs.

CLARKE, P. J., DOWLING, GREENBAUM and FINCH, JJ., concur.

Order modified by deducting the amount of the tax assessed upon the real estate which was held by the entirety, and as modified affirmed, without costs. Settle order on notice.