In the Matter of the Transfer Tax upon the Estate of ANDREAS M. MILLER, Deceased.

UNITED STATES TRUST COMPANY OF NEW YORK, as Executor, etc., of ANDREAS M. MILLER, Deceased, and Another, Appellants; STATE TAX COMMISSION, Respondent.

First Department, February 9, 1923.

Taxation — transfer tax — property conveyed in trust for benefit of third person with remainder over on death of beneficiary, with power of revocation reserved to grantor, is not subject to transfer tax on grantor's death — property given by testator during lifetime to his son and transferred in trust by son for benefit of testator with power of revocation reserved with consent of testator is not subject to transfer tax.

Property conveyed in trust by a testator during his lifetime for the benefit of third persons, with remainder over upon the death of the beneficiary, is not subject to a transfer tax upon the death of the grantor, though the trust deed contains a power of revocation reserving the right to the grantor at any time during his life to revoke the trust deed and to terminate the trust created thereby.

The power of revocation reserved does not evidence an intent upon the part of the grantor to postpone the beneficial enjoyment of the principal so transferred until after his death.

Property given by the testator during his lifetime to his son, which was conveyed by the son in trust for the benefit of the testator during his life and after his death for the benefit of the testator's wife, with remainder over to the son, is not subject to a transfer tax on the death of the testator, though the deed of trust reserves the power in the son to revoke the trust on the consent of the testator if living and if dead upon the approval of the next beneficiary, and though it appears that the property constituting the corpus of the trust fund was given by the testator to his son the day before the trust was executed,

and that it was so given with the expectation on the part of the testator that he would receive the income therefrom during his life, where it further appears that the property was given to the son absolutely without any qualification or condition. CLARKE, P. J., and FINCH, J., dissent, in part.

APPEAL by the United States Trust Company of New York and another from so much of an order of the Surrogate's Court of the county of New York, entered in the office of said Surrogate's Court on the 2d day of May, 1921, as denies their appeal to the surrogate from a taxing order entered in said clerk's office on the 25th day of October, 1920, as amended by an order entered on the 18th day of December, 1920, and affirms such taxing order as so amended.

*Stewart & Shearer* [*George L. Shearer* of counsel, *M'Cready Sykes* with him on the brief], for the appellant United States Trust Company of New York.

*Murray, Prentice & Aldrich* [*Harrison Tweed* of counsel], for the appellant Equitable Trust Company of New York.

*Lafayette B. Gleason* [*Schuyler C. Carlton* of counsel], for the respondent.

McAvoy, J.:

The testator made two deeds of trust dated respectively December 26, 1914, and January 9, 1917. The deed of December 26, 1914, transferred securities of the par value of $336,000 to the trust company, trustee, to pay one-half the income to Helen S. Miller, a daughter-in-law, during her life or until her remarriage, and the other half to Atheline Morton Miller, the daughter of a deceased son, and upon the death or remarriage of Helen S. Miller, the whole income is granted to Atheline Morton Miller, with remainder to her issue.

In default of such issue the corpus of the trust is to be divided in equal shares among Rensselaer Polytechnic Institute, St. Luke's Hospital Association, Duluth, Minn., and the Children's Home Society of Duluth, Minn.

There is a power of revocation in this trust deed, in which the settlor of the trust reserves the right at any time in his lifetime to terminate this trust by an instrument in writing, and thereupon to receive from the party of the second part all the trust property. It reads: " The party of the first part reserves the right at any time during his lifetime, by an instrument in writing under his hand and seal and duly acknowledged so as to authorize it to be recorded, to revoke this trust deed and to terminate the trust hereby created, and thereupon to receive from the party of the second part all the trust property, principal and income, then in its hands."

There is no other reservation in the trust deed of a power or of income in the hands of the settlor. The deed of trust of January

9, 1917, transfers to the trust company a fund of the value of $700,000 to pay the income to the settlor's daughter, Maren Louise Miller Fellowes, during her life, with remainder to her issue, and, in default of issue, to various charitable institutions or for charitable purposes. This trust deed also contains a power of revocation in the settlor, reserving the right at any time during his life to revoke the trust deed and terminate the trusts thereby created. It runs as here quoted: " The party of the first part hereby reserves the right at any time during his life, by an instrument in writing under his hand and duly acknowledged so as to authorize it to be recorded, to revoke this trust deed and to terminate the trusts hereby created."

In each of these deeds the income is given to persons other than the grantor, and the remainder vests upon the death of a person other than the grantor. His death does not affect the disposition of the estate. The instruments upon their face do not show any intent upon the part of the grantor to postpone the beneficial enjoyment of the property so transferred until after the death of the grantor unless the powers of revocation be indicative of such intent.

Unless these powers be so construed, it cannot be asserted that by any of the terms of the trust deeds they are intended to take effect in possession or enjoyment at or after the grantor's death. Obviously both possession and enjoyment of the funds passed at once; and although they might be repossessed by an act of revocation, they never were so affected. These clauses of revocation have no apparent differences from that construed in *Matter of Masury* (159 N. Y. 532, affg. this court in 28 App. Div. 580), where it is stated: " It is necessary, to bring this property within the scope of the law, that the gift should have been made ' in contemplation of the death of the grantor,' or that it was ' intended to take effect, in possession or enjoyment, at or after such death.' The property need not have been in the possession of the appellants; if they were in the enjoyment of the property, or the income from the property, prior to the death of the grantor, and if their relations to the property were not changed by the fact of such death, then the order of the Surrogate's Court confirming the appraisal should be set aside in so far as it affects the rights of these appellants. It will not be contended that the series of trust deeds, beginning back in 1883, were made ' in contemplation of the death of the grantor,' in any legal sense; there is no such claim urged, but we are asked to determine that, because of the fact that the grantor might have revoked the trusts at any time during his lifetime, the rights of the appellants in the trust funds did not become

absolute until after the death of the grantor, and that, therefore, the property passed into the possession of the appellants, or their rights became absolute, upon the death of the grantor, and it is subject to the tax which was ordered by the surrogate to be collected. This does not, however, follow. If it should be determined that the gift did not become absolute until the possibility of its annulment ceased, upon the death of the grantor, it would still be necessary to show that the gift was ' intended to take effect, in possession or enjoyment, at or after such death; ' and to determine the intention of the donor, we must look, not to the argument of the respondent, but to the language of the deeds of trust, the relations which existed between the parties, and the fact of the beneficial enjoyment of the avails of the trust."

In *Matter of Bostwick* (160 N. Y. 489) the court indicated that it may have gone too far in the *Masury* case, saying: " The reserved power to revoke would enable him [testator], of course, to put an end to the trust; but that was not enough to affect the possession of the trustee, or the beneficial enjoyment of the object of the donor's bounty, while the trust was in force, and such a power carried with it no control over the property or its management. In the present case, however, the donor has reserved, during his life, such numerous and extensive powers over the properties transferred by his deeds, as to preclude the legitimate inference of an intention on his part that they were to take effect in absolute possession or enjoyment before his death. * * * Instead of an out and out gift, which would provide for the enjoyment by the beneficiary of the income of the property during her life and for the disposition of the trust fund thereafter, we find powers reserved to alter, or amend, the trust by notice to the trustee; to withdraw, or to exchange, any securities, and to control the acts of the trustee in selling, or disposing of, the securities, or with respect to investments. All these are indicia, rather, of an intention on the donor's part to retain a dominion over the properties transferred, and do not consist with an existing purpose to vest the absolute right to present and future enjoyment in the beneficiaries. He retained practical control of the trust property and left the question of its beneficial enjoyment and eventual possession open until his death.

" The affirmance of the decision in the *Masury* case may seem to have committed this court to views which support the contention now made in behalf of these appellants; but, if that be so, it is an erroneous inference from that decision."

The *Bostwick* decision held the property taxable, because, as indicated in the excerpt from the opinion, the donor of the trust had reserved numerous and extensive powers over the property

transferred; which, said the court, are indicia of an intention on the donor's part to retain a dominion over the properties deeded. This court has pointed out that a mere revocation right cannot determine the intent. (*Matter of Bowers*, 195 App. Div. 548.) In that case the *Masury* case is reiterated, the court stating: " The case under consideration is well within the limits of the *Masury* case, of which the Court of Appeals in *Matter of Bostwick* (160 N. Y. 489, 494) stated: ' The limit was then reached, beyond which the courts could not go without emasculating the provisions of the statute. We thought there was some reason in the facts of the *Masury* case for finding an intention in the donor to make an absolute transfer of property during his life, which the mere reservation of a power to revoke was, of itself, insufficient to negative.' The facts that were persuasive in the *Masury* case are present in the instant case. The trustees took possession of the property and managed and controlled it; the beneficiaries received the income thereof from the date of the deeds, and the condition obtained unchanged (except increased in amount) and unimpaired at the time of the grantor's death."

In *Matter of Carnegie* (203 App. Div. 96) the rule is followed that " The mere reservation of the power to revoke does not render the transfer taxable. There is no evidence before us that Mr. Carnegie ever exercised the power of canceling a pension, or in any manner exercised the powers reserved in the deed. There is nothing to show the intention of the grantor to exercise this power. It was undoubtedly written in the deed by the attorney as a prudent precaution, and the fact that Mr. Carnegie ' did not make use of it up to the time of his death precludes the presumption that he would have done so at any time.' (*Matter of Masury*, 28 App. Div. 580, 585; affd., 159 N. Y. 532; *Matter of Bowers*, 195 App. Div. 548, 552; affd., 231 N. Y. 613.) "

We must conclude under these rulings that the transfer was not taxable under either of these two deeds, and that all property passing by these deeds of trust should be excluded from the assets on which the tax is computed.

The Legislature since, too, seems to have regarded it necessary to amend section 220 of the Tax Law by chapter 430 of the Laws of 1922, thereby bringing into the list of taxable transfers such transfers as " where any change in the use or enjoyment of property included in such transfer, or the income thereof, may occur in the lifetime of the grantor, vendor or donor by reason of any power reserved to or conferred upon the grantor, vendor or donor, either solely or in conjunction with any person or persons to alter, or to amend, or to revoke any transfer, or any portion thereof, as to

the portion remaining at the time of the death of the grantor, vendor or donor, thus subject to alteration, amendment or revocation."

This seems a legislative interpretation of the lack of a previous inclusion of this class of transfers within the purview of the act.

Another trust deed dated March 11, 1907, was not made by the testator. It was made by his son, Athol Morton Miller, and runs from him to the trustee named therein.

It gives the income to the testator, the grantor's father, for life; then to the grantor's mother for life; and on her death, the remainder to the grantor, if living; and if not living, then to his issue; and if no issue, to certain charitable institutions. There is a power to revoke in the son on consent of the father, if living; and if dead, the approval of the mother is required.

Testimony in an action in the Supreme Court, which was read at the appraiser's hearing, indicated that the securities in this deed of trust were given by the father to the son the day before the son executed the trust; that the father spoke to the trust officer of the trust company, and said he wanted the income to go to himself during his life, but stated positively that he had given the securities to his son absolutely without any qualification or condition.

The surrogate indicated in his opinion that he believed the son, whose possession of the security was limited to the brief space of a day, was acting as a mere conduit for the disposition of this property; and that the trust property was intended to remain in the possession of, and belonged to, his father. The two incidents which the surrogate thought indicated that the possession and enjoyment of the transferred securities was not to take effect until the death of the grantor, are: that there elapsed but a day between the acquiring by the son of the title to the securities and the creation of the trust fund by which his father was to benefit; and secondly, the indication in the father's statement, given in the testimony of the trust officer, that the subsequent disposition of the securities by the son was in accordance with the father's expectations.

Although this has some appearance of an attempt to evade the imposition of a transfer tax, nevertheless, if there was an actual *bona fide* complete and unconditional transfer of title, the subsequent conduct of the son in making over the income to his father, even though contemplated or expectant, does not render the transfer one which is intended to take effect in possession or enjoyment after the testator's death. (*Matter of Hendricks*, 163 App. Div. 413; affd., 214 N. Y. 663.) The opinion in that cause recites that " Hendricks had theretofore assigned, transferred and set over to his wife the stocks in question, and at her request

had retained the certificates; that it was mutually agreed he was to retain them in his custody until she should demand them, and he was, in the meantime, authorized to collect the dividends thereon, sell, exchange or otherwise dispose of the stocks for any purpose he might wish, without in any way being accountable therefor. The agreement also contained this clause: ' It is expressly understood and agreed, however, that the title to said stocks is and has been for some time past vested in the party of the second part [the wife] and nothing herein shall in any way affect the same.' * * * All the elements necessary to constitute a valid gift *inter vivos* are here present. The evidence establishes an intent on the part of the donor to give, a delivery of the thing given, and an acceptance by the donee. (*Beaver v. Beaver*, 117 N. Y. 421; *Matter of Bolin*, 136 id. 177.) It is true a gift must be established by evidence that is clear and satisfactory. (*Tompkins v. Leary*, 134 App. Div. 114; *Hemmerich v. Union Dime Savings Inst.*, 205 N. Y. 366.) But after the gift is made complete by delivery it is not necessary that the donee shall retain possession of the property, and it may be redelivered to the donor as the agent of the donee. (*Gannon v. McGuire*, 160 N. Y. 476.) "

The lack of an intent to accomplish an actual transfer there seems clearer than it is in this case, and yet the fact of transfer at the time of the gift was held to defeat the claim of the State for a tax thereon, even though the enjoyment of dividends from the transferred securities was continued, and the donor retained power to " sell, exchange and otherwise dispose of the stocks for any purpose he might wish."

The tax on this transfer was erroneously imposed, and there should be excluded from the assets on which the amount of the tax is computed the property passing by the deed of trust of Athol Morton Miller, dated March 11, 1907.

The order so far as appealed from should, therefore, be reversed, with costs, and the proceeding remitted to the surrogate for further action in accordance with this opinion.

SMITH and MERRELL, JJ., concur; CLARKE, P. J., and FINCH, J., dissent from so much of the opinion as determines that the transfer of the property passing by the deed of trust dated March 11, 1907, is exempt from taxation.

Order reversed, with costs, and proceeding remitted to the surrogate for further action in accordance with opinion.