IN RE ESTATE OF ALBERT M. MARSHALL.[1]

January 17, 1930.

No. 27,528.

[1]Reported in 228 N. W. 920.

234

*Washburn, Bailey & Mitchell,* for relators.

*G. A. Youngquist,* Attorney General, and *John F. Bonner,* Assistant Attorney General, for the state.

HOLT, J.

Certiorari to review a decision of the probate court of St. Louis county determining the amount of the inheritance or transfer tax due the state from the estate of Albert M. Marshall, deceased.

By the decision a tax was imposed, computed upon the total value of the property transferred to the trustees of the A. M. Marshall Trust Estate by Albert M. Marshall, deceased, a few days after the execution and recording, on February 9, 1922, in the office of the register of deeds of St. Louis county, of an agreement or declaration of trust. The value of the property transferred, omitting the real estate in California and Idaho and including the surrender value of certain life insurance policies on the life of Marshall payable to the trust estate, was found to be $1,750,962. Some of the transfers came from trustees of a prior trust created by Mr. Marshall, but that has no bearing here, for it is conceded that decedent was the real transferrer or donor of all the properties in the trust estate. The court found that the transfers to the trustees were not made in contemplation of death but found that they were intended to take effect in possession and enjoyment at and after the death of Albert M. Marshall. This last mentioned controlling finding is challenged as to the six-sevenths of the value of both the physical property and the insurance policies transferred to or held by the trustees.

It is necessary to set out some of the main features of the trust agreement or declaration executed by Albert M. Marshall, his wife, and his son Seth, all designated as trustees. The trustees are to take and hold all property transferred to them or their successors in trust for the benefit of seven named beneficiaries, to-wit: Albert M. Marshall, his wife, and their five children, one-seventh each. Whenever Albert M. Marshall or any other grantor shall transfer any property to the trustees, stating in writing that the property transferred shall be subject to or form a part of the trust created, then such property so transferred shall form a part of the trust estate and shall be held by the trustees, principal and income thereof as set forth in the agreement. Then follow provisions with respect to appointment of trustees in case of vacancies, an enumeration of powers, among which are to conduct the trust as a business, buy, sell and convey property, and borrow and loan money for purposes of the trust. By resolution the trustees may select one of their number executive trustee with such power and authority as

may be therein designated. The ownership of a beneficial interest in the trust does not entitle the beneficiary to any title in or to the trust fund whatsoever, or right to call for a partition or division of the same, or for an accounting. The trustees are to keep books of record and account clearly reflecting the status and condition of the finances and property of the trust and of the individual beneficiaries and render each beneficiary a complete report of the affairs of the trust, which must disclose the net income accruing to each beneficiary. The trustees named are not required to give bonds, but anyone afterwards appointed may be required to do so, in which case the premium shall be paid out of the net income of the trust. The beneficial interest in the trust is to be apportioned equally between the seven named beneficiaries. The net income of the trust, with an unimportant exception, shall be distributed semi-annually or quarterly in equal shares to the beneficiaries during their lifetime. Upon the death of Albert M. Marshall and his wife the share of income payable to such beneficiary shall be added to and distributed with the balance of the net income from the trust fund—to the five children. As to the latter, if any should die prior to the termination of the trust leaving issue, such issue becomes entitled to the income payable to the decedent; if no issue is left the income shall be added to and distributed with the income from the trust fund. A proviso is added by which any child having a spouse may by writing direct the trustees to pay one-third of the net income to the surviving spouse during life. While a beneficiary is a minor the minor's income may be paid to the guardian or may be applied by the trustees to the minor's maintenance and education. The share of the income of each beneficiary under the age of 27 years is to be invested and accumulated until reaching that age, when the accumulations become payable. At and upon the expiration of 21 years from and after the death of the last survivor of the wife, children and grandchildren of the transferrer the trust terminates, and there must be a distribution notwithstanding any beneficiary may not be of the designated age to take. It may be advisable to set out two paragraphs verbatim:

"18th. It is the intention of the parties hereto that full legal title to all property of every kind and nature that may be conveyed to the Trustees hereunder for the purposes of this Trust, shall be irrevocably vested in the Trustees for the uses and purposes hereinbefore specified, and that said title and the Trusts hereinbefore set forth are and shall remain irrevocable except only as this instrument may be amended in accordance with the provisions therefor contained herein.

"19th. This Agreement and Declaration of Trust may be amended and altered in any part whatsoever, except as regards exemption from personal liability of the Trustees and Beneficiaries and except as regards the share of any beneficiary hereunder, by instrument in writing signed by all of the then Trustees hereunder, and consented to by Beneficiaries then entitled to more than one-half ($\frac{1}{2}$) of the income from the Trust Fund hereunder."

After the transfers to the trustees books were opened and the trust administered. Mr. Marshall was by resolution of the trustees appointed executive trustee with full power to administer the trust property as if it were his own. His son and cotrustee, Seth, was executive trustee in his father's absence. On two occasions during the existence of the trust Mr. Marshall was away from the state for several months, during which Seth acted as executive trustee. About four years after the trust was established Mr. Marshall died.

The pertinent part of the inheritance, succession or transfer tax statute under which the state claims reads:

"A tax shall be and is hereby imposed upon any transfer of property, * * * or any interest ·therein, or income therefrom in trust or otherwise, to any person, association or corporation, * * * in the following cases: * * *

"(3) When the transfer is of property made by a resident * * * by deed, grant, bargain, sale or gift, made in contemplation of the death of the grantor, vendor or donor, or intended to take effect in possession or enjoyment at or after such death.

"(4) Such tax shall be imposed when any such person or corporation become beneficially entitled, in possession or expectancy, to

any property or the income thereof, by any such transfer whether made before or after the passage of this act.  *  *  *" G. S. 1923 (1 Mason, 1927) § 2292.

There is no need to go into any discussion as to the nature and right of the state to impose this tax. It is based on the theory that when a person dies owning property the state may appropriate the same if it choose to, or for the privilege of transmitting it to heirs or to others by will the state may impose a tax computed upon the value of the property thus devolving or passing from the decedent to others. If he has disposed of all before death there is nothing upon which to claim an inheritance, succession, or transfer tax when he dies.

The executor concedes the state should be paid a transfer tax as to the one-seventh of the value of the properties transferred in trust. Mr. Marshall reserved the income thereof for life, and as to that part the beneficial enjoyment and interest or title was not intended to pass until the transferrer's death. The authorities are in accord that where the donor retains the whole income during his life the transfer is as a matter of law intended to take effect in possession and enjoyment at or after the death of the transferrer. The controversy here relates to the six-sevenths, the beneficial interest of which on the face of the instrument passed directly and irrevocably by the transfers from Mr. Marshall and vested in his wife and children and the possession and enjoyment of which by said beneficiaries was not at all affected by the donor's or transferrer's death.

It is clear that our statute does not impose a transfer tax upon all gifts. One may give away what he owns while living without subjecting the transfer to a tax under this law. And so one may transfer property in trust to beneficiaries to receive the income therefrom and to come into full possession and enjoyment thereof upon the happening of some event not connected with or contingent upon the death of the transferrer, and such transfers this statute does not attempt to tax. We are convinced that the trust agreement and transfers here involved as written cannot be construed as "intended to take effect in possession or enjoyment at or after" the

death of Mr. Marshall. The state in order to claim the tax must therefore assume the burden of proving the writings to be mere shams made for the purpose of evading a just tax. We cannot adopt the contention of appellant that the writings conclude the state. They may conclude the parties concerned; but the state may go behind the written documents and show the true situation. Courts generally apply the rule that transactions though in writing will be viewed in their entirety to determine whether they are bona fide or merely colorable, made to circumvent the state in enforcing what is due it. Kelly v. Woolsey, 177 Cal. 325, 170 P. 837; People v. Estate of Moir, 207 Ill. 180, 69 N. E. 905, 99 A. S. R. 205; Armstrong v. State ex rel. Klaus, 72 Ind. App. 303, 120 N. E. 717; State Street Tr. Co. v. Treas. & Rec'r Gen'l, 209 Mass. 373, 95 N. E. 851; Hawley's Estate, 214 Pa. 525, 63 A. 1021, 6 Ann. Cas. 572. We do not think State ex rel. Tozer v. Probate Court, 102 Minn. 268, 113 N. W. 888, is to the contrary.

The court below during the course of the trial expressed the opinion that Mr. Marshall at the time the trust was established did not intend to postpone until his death the vesting of the beneficial use to his wife and children or beneficiaries, other than himself, of the properties transferred, but that the finding made must be based upon what took place after the transfers were made. What afterwards occurred and the occasion thereof appears from the record to be this: When the trust was contemplated Marshall had before him reports of his financial standing and income from his business enterprises for several years which indicated that with the income to be derived from his share of the trust to be created, his expected salary, and the income from some $300,000 worth of property which was not to go into the trust, his future needs as measured by the past would be more than amply met. However the deflation begun in 1921 so affected the business of the trust that in 1923 there was a deficit instead of the expected income. To supply his personal needs, which ran about $50,000 a year, Mr. Marshall borrowed or appropriated what he lacked from the amounts of the income credited to the other beneficiaries. In 1924 he executed to the several beneficiaries promissory notes for the amounts so taken. The court

found that the records of the trust estate truly reflected the condition of the accounts of the individual beneficiaries. With the exception of one or two of the beneficiaries they were not consulted either as to the borrowing of the funds credited to them or the giving of the promissory notes. Between January 2, 1922, at which date the trust took effect, and January 1, 1926, Mr. Marshall personally used $142,583.26 of the total net earnings of the trust estate, and of the balance $37,051.86 was used by the wife and children, leaving $39,567.40 of the earnings undisturbed but properly credited to the accounts of the wife and children.

The 36th finding is:

"That Albert M. Marshall secured funds to make up the difference between his personal income from sources other than the Trust Estate of approximately $17,000 and his personal expenditures of approximately $50,000 by appropriating and using the earnings of the Trust Estate in the amount hereinbefore set forth by having the books of the A. M. Marshall Trust Estate show a loan to him from said Trust Estate and by having said Trust books show a loan from the Personal Accounts of his wife and four children, and the said Albert M. Marshall, by the method hereinbefore set forth, secured during his lifetime for his own use, benefit, and enjoyment, the income of the Trust Estate or as much of said income as he in his sole discretion desired."

There is also a finding that at the time of the transfers of the properties to the trust estate Mr. Marshall was impelled in so doing "by that expectation of death which actuates the mind of a person on the execution of his will," but was not impelled "to make a gift causa mortis."

The two last mentioned findings are irrelevant and are based on mere speculation. And the conclusions arrived at in the 36th finding appear to us strained and without substantial support. From the creation of the trust until Mr. Marshall's death, a period of four years, the trust was administered as a real, active trust and not as a pretense. Accurate books were kept and each beneficiary credited with the correct share of the income. Certain ones withdrew and

used parts of the amounts credited. When Mr. Marshall used any part of that which was credited to any other beneficiary he charged himself therewith or executed promissory notes therefor. He had ample means not in the trust wherewith to pay the debts he thus incurred. He disposed of what property he retained by will without, so far as the record shows, attempting to dispose of any part of the trust estate of which his wife and children were beneficiaries. The trust agreement and the transfers bear evidence of careful preparation for the protection of his wife and children, such as a wealthy and successful business man in good faith would be likely to make and carry out. There is not a clause therein suggestive of a sham or pretense or of the reservation of any power or authority by him to deprive the wife or children of what the trust in terms bestows upon them. The time, effort, and expense in forming the trust and subsequently, as long as he lived, in carrying it out as created stamp it as genuine and not as a sham.

The state makes much of the fact that Marshall was selected as executive trustee and was by resolution of the trustees empowered to transact the business of the trust as if he were the owner. This is not of great significance in view of what appears to be settled law, that a donor may create a valid trust naming himself as the sole trustee. 39 Cyc. p. 66; 1 Perry, Trusts (7 ed.) § 96; Reinecke v. Northern Tr. Co. 278 U. S. 339, 49 S. Ct. 123, 73 L. ed. 410. Moreover, it took more than his own vote to make him executive trustee or to give him the authority which the resolution of all the trustees gave him. He reserved no power over the interest of his wife and children in the trust, nor did the trustees assume to grant him any.

The rule is also invoked that on certiorari the decision must stand if different conclusions may be arrived at by reasonable minds. State ex rel. Niessen v. District Court, 142 Minn. 335, 172 N. W. 133; 1 Dunnell, Minn. Dig. (2 ed.) § 1402. Mindful of this rule and also of the one, generally prevailing, that courts will look behind the written documents and view the whole transaction to determine whether a purported trust is genuine or a mere scheme or pretext to evade an inheritance or transfer tax, we nevertheless

are unable to find in this record any reasonable support for the finding that the transfers as to the six-sevenths of the property were intended to take effect in possession or enjoyment at or after the death of Mr. Marshall. If, as the court below considered, the transfers when made and the trust when established were the genuine bona fide transactions they purport to be, the subsequent acts of Mr. Marshall should not readily be assumed to be destructive of the interests his wife and children then acquired. The only thing that in any manner tends to indicate that he violated his duty towards the other beneficiaries was the so-called borrowing or appropriation for his own use of funds from the other beneficiaries. But in view of what he did to protect the rights of such beneficiaries, as already stated, the appropriations should not be considered either as subversive of the trust or as indicating that it was a mere sham. That the trust was created and carried on in good faith is also manifested by the fact that from the beginning thereof accurate books of account were kept showing the income derived by each beneficiary therefrom, upon which the federal income tax was paid. It is true that the motive which impelled the creation of the trust was to lessen the surtaxes which Mr. Marshall's businesses were subjected to; but apparently the government has found nothing illegal or wrong in that desire and has accepted the tax as proper. That the several beneficiaries were not paid the income of the trust semi-annually or quarterly in cash or check but instead were credited the amount on the books does not appear to us of much weight.

Inheritance or transfer tax statutes of other states and the income and inheritance tax statute of the United States have the very same clause upon which the court below rested the authority to impose this tax. Pennsylvania's statute seems to have originated more than a century ago, and New York and Massachusetts have operated thereunder for a long time. No case, either federal or state, has been cited to us, nor have we found any, where under a situation like the one at bar a transfer tax has been imposed. There are however like cases where the donor or transferrer was one of the beneficiaries, as in this instance, and in such case the proportion of the property transferred which produced his income during life

was subjected to the transfer tax upon his death; but the property from which the other beneficiaries received their income and in which they had a beneficial interest was held not subject to a transfer tax, for the transferrer's death did not in any manner affect their rights. We cite a few. People v. Estate of Moir, 207 Ill. 180, 69 N. E. 905, 99 A. S. R. 205; People v. Kelley, 218 Ill. 509, 75 N. E. 1038; People ex rel. Atty. Gen. v. Welch's Estate, 235 Mich. 555, 209 N. W. 930, 934; Matter of Keeney, 194 N. Y. 281, 87 N. E. 428 (in which the state regarded the law so well settled that only the part to which it asserted a right to tax was the one-fourth of which the donor, as one of the four beneficiaries, had the income during life; the surrogate court held this one-fourth subject to the tax and the appellate court affirmed the decision, as did the Supreme Court of the United States, 222 U. S. 525, 32 S. Ct. 105, 56 L. ed. 299, 38 L.R.A.(N.S.) 1139); Bradley v. Nichols (D. C.) 13 F. (2d) 857; Tips v. Bass (D. C.) 21 F. (2d) 460.

On the general proposition that the transfers here to the trust estate vested presently in the beneficiaries, other than the transferrer, an estate or interest in possession and enjoyment, see: People v. Northern Tr. Co. 289 Ill. 475, 124 N. E. 662, 7 A. L. R. 709; Dexter v. Treas. & Rec'r Gen'l, 243 Mass. 523, 137 N. E. 877, 878; Matter of Masury, 28 App. Div. 580, 51 N. Y. S. 331 (affirmed without opinion, 159 N. Y. 532, 53 N. E. 1127); Matter of Bowers, 195 App. Div. 548, 186 N. Y. S. 912 (affirmed without opinion in 231 N. Y. 613, 132 N. E. 910); Matter of Carnegie, 203 App. Div. 91, 196 N. Y. S. 502, 506 (affirmed without opinion in 236 N. Y. 517, 142 N. E. 266). In the last cited case the court said [203 App. Div. 96]:

"The title and possession of the fund vested in the trustee. On his name being placed upon the list of beneficiaries, the pensioner entered upon the enjoyment of the portion of the income allotted to him. Therefore, both possession and enjoyment of the property passed to others during the lifetime of the grantor and did not pass to them upon his death." Dolan's Estate, 279 Pa. 582, 124 A. 176, 49 A. L. R. 858; Shukert v. Allen, 273 U. S. 545, 47 S. Ct. 461, 71

L. ed. 764, 49 A. L. R. 855; Reinecke v. Northern Tr. Co. 278 U. S. 339, 49 S. Ct. 123, 73 L. ed. 410.

One case, where it was held not to vest because of the reservation by the donor of the right to dispose of all the income to charities and also to terminate the trust and retake the property should she survive the beneficiaries, is People v. McCormick, 327 Ill. 547, 158 N. E. 861. Where beneficiaries or donees in trust are entitled to the income from the property placed in trust, the court in Dexter v. Treas. & Rec'r Gen'l, 243 Mass. 523, 526, 137 N. E. 877, said:

"They were from that date [the date of the deed] in possession and enjoyment of the property, and such possession and enjoyment were not in any way contingent on the donor's death. The rights of the life tenants and remaindermen were determined by the instrument of trust and continued to the same extent after the donor's death as before."

And in People ex rel. Atty. Gen. v. Welch's Estate, 235 Mich. 555, 565, 209 N. W. 930, it is said:

"An estate is vested in possession when there exists a right of present enjoyment, and is vested in interest when there is a present fixed right of future enjoyment."

Decisions need not be cited to the proposition that when the donor or transferrer reserves the entire income for himself or for his own disposition during life he is in possession and enjoyment of the property producing it, which property passes to others by his death and the devolution thereof is subject to the tax. This happened to the one-seventh of which deceased derived the income. As to the six-sevenths of the property transferred in trust for the wife and children of deceased we hold that the evidence does not justify the finding that it was intended to take effect in possession and enjoyment at or after the death of Mr. Marshall. We think the trust was genuine and not a sham. The transfers passed a present beneficial interest in possession and enjoyment to the wife and children.

The trust being genuine, the surrender value of insurance policies made payable to the trust estate was not taxable as money coming to his personal estate. Tyler v. Treas. & Rec'r Gen'l, 226 Mass. 306, 115 N. E. 300, L. R. A. 1917D, 633; In re Einstein's Estate, 114 Misc. 452, 186 N. Y. S. 931, affirmed, 201 App. Div. 848, 193 N. Y. S. 931. The state cites as holding otherwise Matter of Reed, 243 N. Y. 199, 153 N. E. 47, 47 A. L. R. 522, but there the policies were payable to a corporation in which decedent was a heavy stockholder, and his estate derived the benefit of the insurance in proportion as the shares of stock which passed at his death were enhanced in value by the insurance. In this case the beneficiaries of the trust were the real recipients of the insurance. There is nothing to show that Marshall paid the premiums or had the power to cancel or revoke the insurance, as was the case in Fagan v. Bugbee (N. J. Sup.) 143 A. 807. The decision in Chase Nat. Bank v. U. S. 278 U. S. 327, 49 S. Ct. 126, 73 L. ed. 405, turned on the fact that the insured reserved the right to change the beneficiaries and paid the premiums. It does not appear that Mr. Marshall did either. A very exhaustive annotation of cases touching the questions here involved is found in 49 A. L. R. 864, and following pages.

The executor claims error because the probate court did not allow the claims of the beneficiaries against Marshall's estate based on the promissory notes and appropriations above mentioned. Had these been allowed the net value of his estate would have been reduced by that much and the inheritance tax diminished accordingly. Until the claims are allowed they cannot figure in the computation of the inheritance tax. Appeal to the district court and not certiorari from this court is the remedy when a just claim is disallowed against the estate of a deceased person.

The order is reversed and the matter is remanded to the probate court to determine the transfer and inheritance tax in conformity to this opinion.

HILTON, J. took no part.