# IN RE ESTATE OF AUGUSTA C. RISING.
## HENRY N. BENSON, ATTORNEY GENERAL, PETITIONER.[1]

April 22, 1932.

No. 28,745.

[1]Reported in 242 N. W. 459.

*Henry N. Benson,* Attorney General, and *John F. Bonner,* Assistant Attorney General, for relator.

*Brown, Somsen & Sawyer,* for respondent.

*O'Brien, Horn & Stringer,* amici curiae, filed a brief in support of the contention of respondent.

STONE, J.

Certiorari to the probate court of Winona county, on petition of the attorney general, to review an order determining the inheritance tax due from the estate of Augusta C. Rising, lately a resident of Winona county. She died there testate December 14, 1930. Property worth $19,563.60, embraced within two trusts hereinafter referred to, was held not taxable. To review that conclusion is the sole purpose of the writ.

Under a trust agreement of June 1, 1918, two parcels of income-bearing securities were transferred by the deceased to a trustee, with full powers of reinvestment and management. The donor reserved all the income to herself for life. Upon her death the income from parcel A was to go to a daughter, Mary B. Rising, as long as she lived, together with such portion "of the corpus of the trust funds" as might be necessary in the judgment of the trustee to provide for the maintenance of Mary during her life. At her death the trust was to terminate, with remainder to another daughter, Kate Rising Coy. To her went also parcel B upon the death of the donor. The trust agreement of June 1, 1918, was amended October 3, 1928, in particulars not material now, save that the First National Bank of Winona became the trustee. It is also executor of the will of the deceased. The order under review is defended on the ground that our inheritance tax does not reach gifts such as these. By amici curiae it is argued that if our statute be construed to the contrary it will be pro tanto unconstitutional.

58

Our present inheritance tax law begins with L. 1905, p. 427, c. 288, entitled: "An act providing for taxation of and fixing the rate of taxation on inheritances, devises, bequests, legacies and gifts, * * *" All through the act it is plain that gifts in lieu of testamentary disposition were intended to be taxed.

That purpose has been emphasized and strengthened by L. 1911, p. 516, c. 372, amending §§ 1 and 2. Section 1 (G. S. 1923 [1 Mason, 1927] § 2292) as far as now material, reads as follows:

"A tax shall be and is hereby imposed upon any transfer of property, * * *:

"(1) When the transfer is by will or by the intestate laws of this state * * *.

* * * * *

"(3) When the transfer is of property made by a resident or by a nonresident when such nonresident's property is within this state, or within its jurisdiction, by deed, grant, bargain, sale or gift, made in contemplation of the death of the grantor, vendor or donor, or intended to take effect in possession or enjoyment at or after such death.

"(4) Such tax shall be imposed when any such person or corporation become beneficially entitled, in possession or expectancy, to any property or the income thereof, by any such transfer whether made before or after the passage of this act."

In furtherance of the same general purpose, subd. 5 covers transfers by the exercise or nonexercise of powers of appointment. By § 3 (G. S. 1923 [1 Mason, 1927] § 2294) the tax is made effective upon the death of the transferor.

■ A testamentary transfer operates only on and by reason of the maker's death. Until then it is ambulatory and divests the maker of none of his estate. 7 Wd. & Phr. (3 ser.) 452. It declares a present will as to disposal of property at death without creating any prior rights. 8 Wd. & Phr. (1 ser.) 6931. So Mrs. Rising's gifts to her daughters were not testamentary. As a working hypothesis we assume also that in the strict sense they were not made in "contemplation of death." There is nothing to indi-

cate that the donor was moved to make them by an apprehension of approaching death from then existing infirmity or impending peril as distinguished from the consciousness common to all that death must come. 26 USCA, c. 20, p. 429; 2 Wd. & Phr. (1 ser.) 1488; 1 id. (2 ser.) 946; 2 id. (3 ser.) 393. But there is authority that such transfers may be considered so far induced by contemplation of death as to be within an inheritance tax not embracing them by more explicit inclusion. Chambers v. Larronde, 196 Cal. 100, 235 P. 1024, 41 A. L. R. 980. See also annotations 7 A. L. R. 1028; 21 id. 1335; 41 id. 989; and 2 Wd. & Phr. (3 ser.) 394; Milliken v. U. S. 283 U. S. 15, 51 S. Ct. 324, 75 L. ed. 809; U. S. v. Wells, 283 U. S. 102, 51 S. Ct. 446, 75 L. ed. 867.

The determinative question is whether the Rising gifts were, within the language of subd. 3, as amplified and explained by subd. 4 of § 1 of the statute, "intended to take effect in possession or enjoyment at or after" the death of the donor. On that event, did the two daughters become "beneficially entitled, in possession or expectancy, to any property or the income thereof" within subd. 4? Unhesitatingly we answer in the affirmative. Gifts inter vivos, absolute except for the reservation of income to the donor for life, are expressly reached by the statute.

■ By no means does it follow from negation of both testamentary character and their making in contemplation of death that the transfers were not substitutes for testamentary disposition. Quite plainly they are just that. The donor's purpose was, while transferring title to others, to postpone their beneficial enjoyment until her death. A succession tax would miss many a fair and open target were it not well sighted directly upon all transfers which can be resorted to in lieu of testamentary disposition; or at least upon those plainly so motivated. Hence, the obvious aim of subds. 3 and 4 of § 1 of our 1911 law (G. S. 1923 [1 Mason, 1927] § 2292). The purpose was to prevent tax evasion by gifts, absolute except for reservations of income and/or possession to the donor for life. Both purpose and the manner of accomplishment characterize many such statutes. 26 R. C. L. 223; 37 Cyc. 1567; Blodgett v.

Guaranty Trust Co. 114 Conn. 207, 158 A. 245, 249; Tyler v. U. S. 281 U. S. 497, 50 S. Ct. 356, 74 L. ed. 991, 69 A. L. R. 758. See marginal note, Coolidge v. Long, 282 U. S. 607, 51 S. Ct. 306, 313, 75 L. ed. 572.

The opposing argument seeks justification in May v. Heiner, 281 U. S. 238, 50 S. Ct. 286, 74 L. ed. 826, 67 A. L. R. 1244. Consideration of that decision must begin with Reinecke v. Northern Tr. Co. 278 U. S. 339, 49 S. Ct. 123, 73 L. ed. 410, 66 A. L. R. 397, involving seven trusts. Two were revocable and so taxable. The other "five trusts," not revocable, were yet held not taxable because there was no transfer by reason of death, within the meaning of the federal law. Life interests in income were created but not for the settlor. There were provisions for accumulation of income but not for the donor. The gifts were instantly complete, inter vivos, because nothing of substance remained to pass from donor to or for the benefit or enjoyment of donees at or after death of the donor.

The reason why there was no *transfer* subject to the federal tax was thus stated [278 U. S. 347]:

"In its plan and scope the tax is one imposed on transfers at death or made in contemplation of death and is measured by the value at death of the interest which is transferred. * * * It is not a gift tax, * * *. One may freely give his property to another by absolute gift without subjecting himself or his estate to a tax, but we are asked to say that this statute means that he may not make a gift inter vivos, equally absolute and complete, without subjecting it to a tax if the gift takes the form of a life estate in one [other than the donor] with remainder over to another at or after the donor's death. It would require plain and compelling language to justify so incongruous a result and we think it is wanting in the present statute."

This language was lifted bodily, by quotation, to justify and explain the result in May v. Heiner, 281 U. S. 238, 244, 50 S. Ct. 286, 74 L. ed. 826, 67 A. L. R. 1244, notwithstanding the very *different* sort of gift there considered—different in that there was reserved to the donor a very substantial kind of right and enjoy-

ment not to cease until her death. The gift was in trust to pay income to the donor's husband for life, then to the donor if she survived him, with remainder over. Again, simply because there was doubt of construction, to be resolved in favor of the taxpayer, it was held there was no taxable transfer.

In Reinecke v. Northern Tr. Co. 278 U. S. 339, 49 S. Ct. 123, 73 L. ed. 410, 66 A. L. R. 397, and May v. Heiner, 281 U. S. 238, 50 S. Ct. 286, 74 L. ed. 826, 67 A. L. R. 1244, "the only relevant question was one of construction." Milliken v. U. S. 283 U. S. 15, 20, 51 S. Ct. 324, 75 L. ed. 809, 813; Burnet v. Northern Tr. Co. 283 U. S. 782, 51 S. Ct. 342, 75 L. ed. 1412; Morsman v. Burnet, 283 U. S. 783, 51 S. Ct. 343, 75 L. ed. 1412; McCormick v. Burnet, 283 U. S. 784, 51 S. Ct. 343, 75 L. ed. 1413. Of course such decisions end debate as to the construction of the act of congress which they interpret. But, however persuasive, they are not binding upon us in the construction of our own statute, as to which it is our privilege to err, if that be the result of our deliberate judgment. That aside, our state tax is so far different, in incidence, from the federal excise that the cases are easily distinguishable. "In its plan and scope" the latter is "on transfers at death or made in contemplation of death." "It is not a gift tax." Our law, on the contrary, does tax gifts. The federal "exaction is not a succession tax * * *. The right to become beneficially entitled is not the occasion for it." Nichols v. Coolidge, 274 U. S. 531, 541, 47 S. Ct. 710, 71 L. ed. 1184, 52 A. L. R. 1081. Our law imposes not alone a transfer tax but a succession tax also. State v. Brooks, 181 Minn. 262, 232 N. W. 331. "The thing burdened is the right to receive." Leach v. Nichols, 285 U. S. 165, 169, 52 S. Ct. 338, 340, 76 L. ed. 453. With reference to the federal tax, a transfer and not a succession tax was the language used in Reinecke v. Northern Tr. Co. 278 U. S. 339, 49 S. Ct. 123, 73 L. ed. 410, 66 A. L. R. 397, and repeated in May v. Heiner, 281 U. S. 238, 50 S. Ct. 286, 74 L. ed. 826, 67 A. L. R. 1244, to the effect that one may freely give away his property without subjecting his estate to a tax, and that otherwise the result would be "incongruous."

Incongruous or not, our state tax is expressly put on successions of the kind now involved. Doubt, if any, left by subd. 3 of § 1 is removed by subd. 4, explicitly taxing the receipt of "any property or the income thereof" when the donee becomes "beneficially entitled, in possession or expectancy." Congress has recently (by act of March 3, 1931, 46 St. 1516) strengthened and amplified its estate tax law by an amendment (to § 302(c) U. S. C. Supp. V, Title 26, § 1094(c), 26 USCA, § 1094(c)), expressly including with transfers in contemplation of or intended to take effect in possession or enjoyment at or after death, "a transfer under which the transferor has retained for his life or any period not ending before his death (1) the possession or enjoyment of, or the income from, the property; or (2) the right to designate the persons who shall possess or enjoy the property or the income therefrom." There was in the federal statute, before that amendment, no counterpart of our subd. 4 of § 1. For that reason alone, May v. Heiner, 281 U. S. 238, 50 S. Ct. 286, 74 L. ed. 826, 67 A. L. R. 1244, is easily distinguishable, and no obstacle to our holding the successions here involved subject to tax. On that point we are in accord with Blodgett v. Guaranty Tr. Co. 114 Conn. 207, 158 A. 245, and Worcester Co. Nat. Bank v. Commr. 275 Mass. 216, 175 N. E. 726.

■ One may transfer in fee—but not with a subtraction that would be prohibited restraint upon alienation. So also one may give away his whole estate or any item of it; and if the gift be complete, inter vivos, and have no reference to death, as condition on possession, enjoyment, or dominion by the donee, our succession tax will have no application. In re Estate of Marshall, 179 Minn. 233, 228 N. W. 920. But if the donor divide his estate into life use and remainder, there is, upon termination of the life interest, a succession, a coming into or increase of enjoyment and dominion, an "enlargement of property rights" (Tyler v. U. S. 281 U. S. 497, 502, 50 S. Ct. 356, 74 L. ed. 991, 69 A. L. R. 758) a completion of title, which may be, and in this state is, taxed.

"The statute recognizes the familiar distinction between taking effect in possession or enjoyment and vesting in right, title or in-

terest." Worcester Co. Nat. Bank v. Commr. 275 Mass. 216, 175 N. E. 726. Among the cases recognizing the broad difference for tax purposes between the vesting in interest, which takes place with the initial transfer, and the succession to use and enjoyment, where that is postponed to the death of the grantor, is Vanderbilt v. Eidman, 196 U. S. 480, 492, 25 S. Ct. 331, 49 L. ed. 563. It involved the Spanish-American war tax (Act of June 13, 1898, §§ 29, 30, 30 St. c. 448, p. 464.) Like our Minnesota law, as to any transfer taking effect "in possession or enjoyment after the death of the grantor," it put the tax "not upon the mere vesting in a technical sense of title to the gift, but upon the actual possession or enjoyment thereof." And under the earlier Civil war tax law, the tax as to a remainder was held to take effect only when the remainderman became "entitled to the possession or enjoyment of the estate." Clapp v. Mason, 94 U. S. 589, 592, 24 L. ed. 212.

Perfect title consists in "the union of actual possession, the right of possession, and the right of property." 4 Kent, Com. (13 ed.) 402. A gift transfers what the law classifies as title by purchase; that is, by act of the parties rather than operation of law. In the passing of title by descent the occasion is the death of the ancestor. If by gift, where the donor makes his death both condition on and occasion for his donee's coming into possession and enjoyment, death plays for practical purposes about the same part in the one case as in the other. In the one the law but makes it the effective thing for completing title that the donor makes it in the other. Where a trustee intervenes and income (ordinarily the principal desideratum) is reserved to the donor for life, the donee succeeds to the real substance and value only upon and by reason of the death of the donor.

Classifying such gifts with those causa mortis, in contemplation of death, and of a testamentary character, does not much offend common law concepts. But if it does, what of it? Legislation must meet the problems of a changing world. It is limited by constitutional inhibitions but not at all by common law formulae. It may adapt the latter to accomplish social or economic change, or, if

64

need be, ignore them. For the purpose of succession taxes, all that has been done is to add a new member to an old group. Gifts causa mortis, testamentary, and in contemplation of death are now accompanied by those of the nature here exemplified, which are so easily and much used as substitutes for testamentary disposition. An old classification has been enlarged for the limited purposes of taxation.

■ The constitutional question is whether by that classification there is impairment of due process.

At the outset "there is no natural right to create artificial and technical estates with limitations over, nor has the remainderman any more right to succeed to the possession of property under such deeds than legatees and devisees under a will. The privilege of acquiring property by such an instrument is as much dependent upon the law as that of acquiring property by inheritance, and transfers by deed to take effect at death have frequently been classed with death duties, legacy and inheritance taxes." Keeney v. New York, 222 U. S. 525, 533, 32 S. Ct. 105, 106, 56 L. ed. 299, 304, 38 L.R.A.(N.S.) 1139.

The same case [222 U. S. 536] is authority that, while there can be no unreasonable discrimination, yet when it comes to selecting the subjects of taxation if "there is a difference, it need not be great or conspicuous in order to warrant classification. * * * so far as the Fourteenth Amendment is concerned, the State could put transfers intended to take effect at the death of the grantor in a class with transfers by descent, will, or gifts in contemplation of the death of the donor, without, at the same time, taxing transfers intended to take effect on the death of some person other than the grantor, or on the happening of a certain or contingent event."

The broad liberty enjoyed by lawmakers in classifying the subjects of taxation was the basis of decision in Tyler v. U. S. 281 U. S. 497, 50 S. Ct. 356, 74 L. ed. 991, 69 A. L. R. 758, followed in Phillips v. Dime T. & S. D. Co. 284 U. S. 160, 52 S. Ct. 46, 76 L. ed. 68. They hold it permissible to classify the transfer which takes

place on the death of a tenant by the entirety with others conventionally subject to death duties "to prevent an avoidance, in whole or in part, of the estate tax." A gift in trust, but with reservation of possession or income to the *donor* for life, more resembles dispositions testamentary and in contemplation of death than does the creation of a tenancy by the entirety. Inasmuch as upon the demise of a tenant by the entirety there is a taxable transfer, to say nothing of a succession, we cannot see why on the termination of a donor's life use there is not a taxable succession to the remainderman. His is a more considerable enlargement of property right than accrues to the survivor when a tenant by the entirety dies.

It is conceded that "so long as the privilege of succession has not been fully exercised, it may be reached by the tax." Saltonstall v. Saltonstall, 276 U. S. 260, 271, 48 S. Ct. 225, 72 L. ed. 565. But, on language found in Coolidge v. Long, 282 U. S. 582, 51 S. Ct. 306, 310, 75 L. ed. 562, the impossible conclusion is argued that succession as well as transfer was instantly complete when Mrs. Rising created the two trusts. Coolidge v. Long, 282 U. S. 582, 51 S. Ct. 306, 75 L. ed. 562, was one of several cases where the "only relevant question" was as to the competency of congress to make a death duty retroactive. The involved transfers had been made and the affected estates completely vested in interest before enactment of the law. The motif of the majority opinion [282 U. S. 599] is that:

"No act of congress has been held by this court to impose a tax upon possession and enjoyment, the right to which had fully vested prior to the enactment. * * * This court has not sustained any state law imposing an excise upon mere entry into possession and enjoyment of property, where the right to such possession and enjoyment upon the happening of a specified event had fully vested before the enactment."

It is said in that opinion [282 U. S. 598] arguendo, that "succession is effected as completely by a transfer of a life estate to one and remainder over to another as by a transfer in fee." *That is,* a transfer of the fee, but incumbered by a life estate. And certainly the immediate vesting of the remainderman's interest does

not bring him either possession or right of possession, two essentials of perfect title. His succession to both is postponed to the donor's death. A remainder is an estate or interest "to take effect in possession or enjoyment upon the determination of a prior estate." 2 Washb. R. P. (5 ed.) 585. So in the very nature of the thing, the remainderman's real succession can come only upon and by reason of the death of life tenant.

The language from Coolidge v. Long, 282 U. S. 582, 602, 51 S. Ct. 306, 75 L. ed. 562, most stressed in argument here is this:

"The overwhelming weight of authority sustains the conclusion that the succession in the present case was complete when the deed took effect." "Succession" there meant the vesting in interest, and not at all the coming into possession and enjoyment. Had "succession" been used in any other sense, "the overwhelming weight of authority" would be the other way. "A transfer of property to trustees to pay the income to the transferrer during life, with directions that upon his death the corpus shall be paid to designated beneficiaries, though the trust may be irrevocable, is deemed by practically all courts to fall within the meaning of a transfer intended to take effect at or after death." Anno. 49 A. L. R. 878, supplemented at 67 A. L. R. 1250.

It cannot be otherwise for these simple reasons:

An estate "is vested in interest when there is a present fixed right of future enjoyment. * * * In this sense, therefore, a vested remainder is, to all intents, an estate commencing *in praesenti*, though to be enjoyed *in futuro*." 2 Washb. R. P. (5 ed.) 594. "This distinction should be kept in mind, between the vesting of a *right* to a future estate of freehold, the vesting * * * in interest, and the vesting of the same *in possession*." Id. 778.

These statements concern estates in real property, but they now apply as accurately to interests in chattels. 2 Kent, Com. (12 ed.) 352. But, be it always remembered, "the interest of the party in remainder in chattels is precarious, because another has an interest in possession; and chattels, by their very nature, are exposed to

abuse, loss, and destruction." Id. 354. That risk, emphasized by periods of panic and depression, is another cogent factor showing how much the real succession to chattels is postponed to the death of the donor who has reserved the income for his life. There is always a very real risk that there will remain little or nothing to which the donee can succeed.

Our legislature, without impugning the common law concept of the *vesting in interest* of the remainder, which is effected by a gift with reservation of life estate or use to the donor, has simply recognized that death, although not the "generating source" of interest, is yet the operative event which causes "the vesting *in possession,*" and the coming into enjoyment, and so perfects title in the remainderman. That operation is plainly and in any view a succession of such real and substantial sort, with such vital and enlarging effect on property rights as to make it the proper subject of an excise. Tyler v. U. S. 281 U. S. 497, 50 S. Ct. 356, 74 L. ed. 991, 69 A. L. R. 758.

That conclusion is confirmed by Heiner v. Donnan, 285 U. S. 312, 320, 52 S. Ct. 358, 359, 76 L. ed. 501. The holding in that case is that § 302(c) of the revenue act of 1926, 44 St. 9, 70 (U. S. C. Supp. V, Title 26, § 1094, 26 USCA, § 1094) denies due process of law in so far as it attempts to make conclusive the presumption that an absolute and complete gift inter vivos, made within two years of the death of the donor, was "made in contemplation of death within the meaning of this title." The language of the majority opinion, delimiting the precise basis of that conclusion and distinguishing previous cases, was in part as follows [285 U. S. 322]:

"The 'generating source' of such a gift is to be found in the facts of life and not in the circumstance of death. And the death afterward of the donor in no way changes the situation; that is to say, the death does not result in a shifting, or in the completion of a shifting, to the donee of any economic benefit of property, which is the subject of a death tax, Chase Nat. Bank v. U. S. 278 U. S. 327, 338, 49 S. Ct. 126, 73 L. ed. 405, 63 A. L. R. 388; Reinecke v. Northern Tr. Co. 278 U. S. 339, 346, 49 S. Ct. 123, 73 L. ed. 410, 66 A. L. R.

397; Saltonstall v. Saltonstall, 276 U. S. 260, 271, 48 S. Ct. 225, 72 L. ed. 565; nor does the death in such case bring into being, or ripen for the donee or anyone else, as far as the gift is concerned, any property right or interest which can be the subject of any form of death tax. Compare Tyler v. U. S. 281 U. S. 497, 503, 50 S. Ct. 356, 74 L. ed. 991, 69 A. L. R. 758. Complete ownership of the gift, together with all its incidents, has passed during the life of both donor and donee, and no interest of any kind remains to pass to one or cease in the other in consequence of the death which happens afterward."

We see no escape from the construction we place upon our statute. Its purpose is too plain. Neither do we find constitutional objection to the law as so construed. There is no question of statutory retroactivity, as in Coolidge v. Long, 282 U. S. 582, 51 S. Ct. 306, 75 L. ed. 562, and Nichols v. Coolidge, 274 U. S. 531, 47 S. Ct. 710, 71 L. ed. 1184, 52 A. L. R. 1081. Neither is there arbitrary resort to the period elapsing between gift and death of donor as the sole criterion of character. That was the feature condemned in Schlesinger v. Wisconsin, 270 U. S. 230, 46 S. Ct. 260, 70 L. ed. 557, 43 A. L. R. 1224, and Heiner v. Donnan, 285 U. S. 312, 52 S. Ct. 358, 76 L. ed. 501. See also Nichols v. Coolidge, 274 U. S. 531, 47 S. Ct. 710, 71 L. ed. 1184, 52 A. L. R. 1081. There may be in this case a question of fact, yet undetermined, whether the gifts were in contemplation of death within the rule of U. S. v. Wells, 283 U. S. 102, 51 S. Ct. 446, 575 L. ed. 867. But that aside, they are within a class expressly included by our statute.

The substantial difference between the two gifts now in question we ignore because our present function is to settle only the question of taxability. That resolved in the affirmative, the amount of tax remains to be determined below. In In re Estate of Marshall, 179 Minn. 233, 238, 228 N. W. 920, 922, we said that "where the donor retains the whole income during his life the transfer is as a matter of law intended to take effect in possession and enjoyment at or after the death of the transferrer." Assuming that to be dictum, as counsel insist, we have considered the question anew, with the result already apparent.

It follows that the order under review must be reversed and the case remanded with instructions to hold the successions to the two gifts in question subject to tax and to determine the amount thereof.

So ordered.

OLSEN, J. (dissenting).

The federal estate tax statute, U. S. C. Supp. V, Title 26, § 1094, 26 USCA, § 1094, imposes the tax on transfers made "in contemplation of or intended to take effect in possession or enjoyment at or after his [the donor's] death." Our own transfer tax statute, G. S. 1923 (1 Mason, 1927) § 2292(3), imposes the tax on transfers made "in contemplation of the death of the grantor, vendor or donor, or intended to take effect in possession or enjoyment at or after such death." There is no difference between the two statutes as to the subject upon which the tax is laid. The fact that one tax is called an estate tax and charged and collected out of the net estate and the other is called a transfer tax and apportioned and collected out of the respective shares of the beneficiaries does not change the meaning of the language clearly specifying the subject upon which the tax is laid.

As said in Tyler v. U. S. 281 U. S. 497, 503, 50 S. Ct. 356, 359, 74 L. ed. 991, 998, 69 A. L. R. 758:

"The question * * * is not whether there has been, in the strict sense of that word, a 'transfer' of the property by the death of the decedent, or a receipt of it by right of succession, but whether the death has brought into being or ripened for the survivor, property rights of such character as to make appropriate the imposition of a tax upon that result (which congress may call a transfer tax, a death duty, or anything else it sees fit), to be measured, in whole or in part, by the value of such rights."

In our present case the transfers in question could be taxed only in case they were made in contemplation of death or intended to take effect in possession or enjoyment at or after the death of the donor. The opinion holds that the transfers were not made in contemplation of death. There remains only the question of whether

the transfers were intended to take effect in possession or enjoyment at or after the death of the donor. The corpus of the securities was transferred absolutely and irrevocably to the trustee. The donor reserved to herself the income therefrom during her life. At her death the income from a specified part of the securities was to go to one of her daughters for life and remainder then to another daughter. To the other daughter was also to go the other specified part of the securities on the death of the donor.

The federal supreme court has passed upon the right to tax such transfers and has held that where the property is transferred absolutely and irrevocably to a trustee, to be by such trustee delivered to named beneficiaries at or after the death of the donor, with income reserved to the donor or other person or persons for life, and the transfer is not made in contemplation of death, it is not taxable as one intended to take effect in possession or enjoyment at or after the death of the donor. That court holds that at the death of the donor, who had reserved to herself the income from securities so transferred to a trustee, no interest in the property held under the trust instrument passed from the donor to the living beneficiaries; that title thereto had been definitely fixed by the trust instrument; that the interest which the donor had therein immediately prior to her death was obliterated by that event. Reinecke v. Northern Tr. Co. 278 U. S. 339, 49 S. Ct. 123, 73 L. ed. 410, 66 A. L. R. 397; May v. Heiner, 281 U. S. 238, 50 S. Ct. 286, 74 L. ed. 826, 67 A L. R. 1244; Coolidge v. Long, 282 U. S. 582, 51 S. Ct. 306, 75 L. ed. 562.

These cases seem to me to control our present case. I have found nothing in the federal supreme court cases in conflict with these holdings. The later case of Heiner v. Donnan, 285 U. S. 312, 52 S. Ct. 358, 76 L. ed. 501, is not in conflict therewith.

It may be noted that the federal statute, by the amendment or reënactment of 1926, has now expressly provided that the tax shall apply to transfers where the transferor has reserved to himself the income from the property during his life.