FIRST NATIONAL BANK OF MINNEAPOLIS,
ADMINISTRATOR OF ESTATE OF
FREDERICK B. WELLS, JR., v.
COMMISSIONER OF TAXATION.

84 N. W. (2d) 55.

June 21, 1957—No. 37,121.

*Best, Flanagan, Lewis, Simonet & Bellows* and *Charles S. Bellows,*
for relator.

*Miles Lord,* Attorney General, and *Arthur C. Roemer,* Special As-
sistant Attorney General, for respondent.

MATSON, JUSTICE.

Certiorari to review an order of the Board of Tax Appeals.

We are confronted with this basic issue: Where, under the terms of

an irrevocable trust, a donee is unconditionally vested with a power of appointment to designate by will to whom the trust estate shall be distributed at the time of the donee's death, and where the trust instrument further provides that in the event the donee dies intestate the trust estate shall be paid and distributed to the donee's heirs in accordance with the statutes governing the descent and distribution of personal property, *is there a taxable transfer of property* (*within the meaning of M. S. A.* 291.01, *subd.* 1[1], *as qualified by* § 291.01, *subd.* 3) when the donee, after having come into full possession of such power of appointment while still competent to make a will, becomes incompetent to make a will by reason of incurable insanity which continues until his death several years later, and the trust res, by reason of the donee's failure to exercise or release such power of appointment, passes to the donee's heirs in accordance with the statutes governing the descent of personal property?

The decedent donee, Frederick B. Wells, Jr., whose estate is involved in this action, was a beneficiary under four trusts. Three of these were created by his father, Frederick B. Wells, Sr., who survived him. In 1922 the father created the first trust, which provided that upon the death of the donee the trust estate should be distributed to such person or persons as the donee might designate in his will. In other words, the trust granted to him a general power of testamentary disposition. The trust further provided that, if the donee died intestate, necessarily then failing to exercise the power, leaving a wife, children, or children of children, the trust estate should be distributed in accordance with the laws governing the descent and distribution of personal property presently in effect in Minnesota.

In 1923 the same trust settlor created two additional trusts wherein the trust res consisted of stocks and insurance policies on his life. These two trusts, herein designated as the insurance trusts, contained provisions similar to the 1922 trust in that they provided for a general testamentary power of appointment and upon the appointment failing the trust res should be payable to the donee's surviving wife and children in accordance with the laws governing the descent and distribution of personal property.

The final trust was created in 1929 by the decedent donee's sister

Mary and by the wife of decedent's deceased brother Thomas. This latter trust included the interest Thomas had in the two insurance trusts. It provided that the income should be paid to the decedent donee and to the donee's brother and sister. The trust further provided that upon the death of the last survivor of said trust beneficiaries—the decedent donee herein was the survivor—the portion of the trust estate from which the decedent donee was entitled to receive income at his death was to be paid over to such persons as decedent donee should designate by will or in default of such appointment to the issue of such survivor. Two children survived him.

Decedent donee, Frederick B. Wells, Jr., who attained his majority on November 6, 1927, was adjudged insane in 1938 and his insanity, which was incurable, continued until his death in 1949. He died without having exercised or released his testamentary powers of appointment in the four trusts. During the period from 1927 to 1938 the donee was not only vested with the power of testamentary appointment but also enjoyed the capacity to make a will.

In computing the inheritance tax, the commissioner of taxation included as taxable the values of the assets in the four trusts in the amounts which became payable to decedent donee's widow and two children. The commissioner's tax determination was affirmed by order of the Board of Tax Appeals and the latter order is now before us for review by writ of certiorari.

Relator contends that property received by the decedent donee's wife and children from the respective trusts was not received by them by virtue of any exercise of, or failure to exercise, a power of appointment but was received under the original grants in the trust instruments and that, therefore, no inheritance tax should have been imposed under § 291.01, subd. 1, which reads in part as follows:

"A tax shall be and is hereby imposed upon *any transfer* of property, real, personal or mixed, or any interest therein, or income therefrom in trust or otherwise, to any person, association or corporation, except county, town or municipal corporation within the state, for strictly county, town or municipal purposes, in the following cases:

"(1) When the transfer is by will or by the intestate laws of this state from any person dying possessed of the property while a resident

of the state;" (Italics supplied.)

Section 291.01, subd. 3, defines a transfer of property in the following words:

"When any person or corporation *shall exercise a power of appointment derived from any disposition of property* made either before or after the passage of this chapter, *such appointment* when made *shall be deemed a transfer taxable* under the provisions of this chapter in the same manner as though the property to which such appointment relates belonged absolutely to the donee of such power and had been bequeathed or devised by such donee by will; *and when any person* or corporation *possessing such a power* of appointment so derived *shall omit or fail to exercise the same* within the time provided therefor, in whole or in part, *a transfer taxable under the provisions of this chapter shall be deemed to take place to the extent of such omission or failure,* in the same manner as though the persons or corporations thereby becoming entitled to the possession or enjoyment of the property to which such power related had succeeded thereto by a will of the donee of the power failing to exercise such power, taking effect at the time of such omission or failure." (Italics supplied.)

It is relator's position that, since the decedent was insane, he had no capacity to exercise his power of appointment and that, therefore, his nonexercise of the power because of legal incapacity cannot be regarded as an omission or failure to exercise the power within the meaning of § 291.01, subd. 3. Relator asserts that the property must therefore be treated as passing according to the terms of the trust instruments and thus not subject to the inheritance tax.

The inheritance tax imposed by statute (§ 291.01, subd. 1[1], as modified by § 291.01, subd. 3) upon a transfer of property which results from the exercise of, or failure to exercise, a power of appointment is not an exaction upon either the right to exercise or not to exercise the power, or upon the privilege of the donee to designate the recipients of the property, but it is instead an exaction upon the privilege of receiving the property.[1] The thing burdened by the tax is the right of ·

[1] See, State ex rel. Hilton v. Probate Court, 143 Minn. 77, 172 N. W. 902; State v. Wagner, 233 Minn. 241, 250, 46 N. W. (2d) 676, 682, 23 A.

an appointee, beneficiary, legatee, or heir to receive a portion of the property.[2] Until that right to receive is vested in a definite recipient, no taxable privilege of receiving exists.

During the lifetime of the donee—at least in the absence of his release of the power of testamentary appointment—the donee's right to exercise or not to exercise the power of appointment is as fully ambulatory as his last will. The basis for treating the nonexercise of the power of appointment as a transfer within the meaning of § 291.01, subd. 1(1), is the presence in the donee of a right at all times to control succession. The donee has the right to designate by will those who shall receive the estate, or he has the right to refrain from exercising the power and thus to permit the estate to pass to those named in the instrument creating the power.[3] By exercising the power he may even give his own creditors the right or privilege of receiving the property. In the instant case the decedent possessed this power to control succession (and the legal capacity to exercise it) *either through action or inaction* for a period of 11 years in the case of the first three trusts and for a period of 9 years in the case of the 1929 trust. It is beyond dispute that, if the decedent had died sane in 1938 without exercising his powers, this would have constituted a failure or omission to appoint within the meaning of § 291.01, subd. 3, and all properties subject to his powers of appointment would have been quite properly included in determination of the inheritance tax.[4]

The important consideration here is that the decedent has had an opportunity to control the succession. By failing to appoint, he has by necessary implication indicated that those named in the instrument to take upon a default in the exercise of the power should enjoy the right and privilege of receiving the property. While it is true that the decedent may have had an unexpectedly short time within which to

L. R. (2d) 762, 772; In re Estate of Rising, 186 Minn. 56, 242 N. W. 459; In re Estate of Bowlin, 189 Minn. 196, 248 N. W. 741; In re Estate of Bigelow, 199 Minn. 239, 271 N. W. 459; 18 Dunnell, Dig. (3 ed.) § 9571a.

[2]See, In re Estate of Rising, 186 Minn. 56, 61, 242 N. W. 459, 461.

[3]See, Minot v. Treasurer & Receiver General, 207 Mass. 588, 93 N. E. 973, 33 L. R. A. (N. S.) 236.

[4]See, State v. Brooks, 181 Minn. 262, 232 N. W. 331.

exercise his power, the same situation would have existed if he had died in 1938. In this respect incurable insanity accomplished the same result as death. Since a donee has control over the ultimate disposition of the property, he is treated as an outright owner for tax purposes and it would be illogical to hold that the property subject to his testamentary power should be excluded from his taxable estate simply because at some time prior to his death legal incapacity to make a will overtakes him.[5]

Any other interpretation of the statute would be a source of confusion and uncertainty and would encourage litigation. Courts would be forced to consider what period of incapacity prior to death is necessary to exempt the property from an inheritance tax. Here, the period of incapacity because of incurable insanity was 11 years. If relator's contention were sound, the same result would follow if incurable insanity existed for only a month prior to death, or if the decedent should spend the last month of his life in a coma as a result of accidental injury. Obviously, we have no right to adopt relator's theory of statutory interpretation and thus attribute to the legislature an intent to produce an absurd and unreasonable result. § 645.17(1).

Relator suggests that holding the property here taxable would require the same application where the testamentary power is given to a minor and he dies without reaching the age of 21 and thus never possesses the legal capacity to exercise the power. We do not have that situation in the instant case and we shall leave for future determination the question that may arise where a decedent donee never had the legal capacity to exercise the power of appointment vested in him.[6]

Since the decedent donee in this case was vested with the power of appointment, and had both the opportunity and the capacity to exercise that power, his right to control succession existed not only in theory but in fact and supplied the statutory basis for the imposition of the inheritance tax. It follows that the decision of the Board of Tax Appeals was correct.

The relator next contends that the Board of Tax Appeals erred in holding the insurance trusts terminated at decedent's death since the

---

[5]See, 52 Yale L. J. 494, 500.
[6]See, 52 Yale L. J. 494, 500.

father of the decedent was still alive and necessarily the proceeds of the policies on his life had not been collected. While it is obvious from the language of the trust instrument that the settlor (Wells, Sr.) did not contemplate the possibility that he would outlive his children,[7] the language of the instrument clearly provides that, upon the death of each son, his specified interest should pass to the person appointed by him or in default of such appointment to such person or persons as are entitled to take under laws of descent in Minnesota. The result, however, would be the same even if it were determined that the trust did not terminate. The widow and children still took an indefeasible right to the decedent's share of the trust fund and this is clearly within the scope of § 291.01 which imposes the tax upon the transfer of property, real, personal, or mixed, or any interest therein or income therefrom in trust.

The final issue raised by the relator alleges that the board erred in holding that the decedent's power of appointment under the 1929 trust extended to the shares of the assets of the two insurance trusts which became a part of the 1929 trust. The insurance shares referred to here were those which were originally given to the donee's brother Thomas and assigned by the latter to his sister Mary. Mary joined with Thomas' widow and set up the 1929 trust and included in the trust res all interest of Thomas and of his possible appointee, or in the default of appointment, of his heirs.

The provision of the 1929 instrument relevant to this discussion provides that:

---

[7]The trust instruments in question required that the trustee should use the dividends received from the stock in the trust to pay the premiums on the insurance policies involved and to also accumulate a 2-year reserve for premium payment. Upon the death of Mr. Wells, Sr., the trustee was to take the proceeds from the policies and purchase securities from his (Wells, Sr.) estate. When this was done, the income from the $225,000 was to be divided between the three sons, including decedent. The income from the balance of trust was to be divided between the three sons and the daughter. Finally, the trust provided that upon the death of each of the sons, $75,000 in cash or securities plus one-fourth of residue of trust over $225,000 was to be paid to such person as he might appoint by will or upon default of power to persons entitled to receive under laws of descent in Minnesota.

"* * * upon the death of the last survivor [decedent] of said three beneficiaries the trustee shall pay over and deliver the portion of the trust estate, *the income from which said last survivor was entitled to receive* at the time of his or her death to such persons as such last survivor may have appointed by will to receive the same, or in default of such appointment, to the issue of such last survivor * * *." (Italics supplied.)

Relator does not dispute the fact that some dividends from the insurance trust were paid into the 1929 trust and that the decedent donee actually received a portion of this income. Nor should we overlook the key factor of the language itself in the 1929 instrument. It provides that the appointee, or in default of such appointment the issue of decedent, was to be paid the portion of the trust estate "the income from which said last survivor [decedent donee herein] was *entitled* to receive at the time of his or her death." (Italics supplied.) The word *entitled* means to have a right to receive. The test, therefore, is not what the decedent actually received, but to what income he would have had a right to receive if such income were produced. It follows that if Wells, Sr., had predeceased his son (the decedent donee herein) and the proceeds of the policies on his life had been converted to income producing securities, the decedent would then have been entitled under the 1929 trust to receive one-third of the income from the one-third interest in the corpus of the insurance trusts which partially made up the 1929 trust estate.

The language of the 1929 trust instrument is clear. Upon default of the decedent's power of appointment, his two children were to be paid whatever portion of the trust estate from which he (decedent donee) had been entitled to receive income at his death. Under the 1929 trust the decedent was entitled to one-third of any income which was or might be produced by the interest in the insurance trusts which Thomas' widow had possessed and conveyed to the 1929 trust. Under the provisions of the insurance trust instruments, she (Thomas' widow) received one-third of the first $225,000 and one-fourth of any amount in excess of this figure.

From this discussion it is readily apparent that a succession tax was properly imposed with respect to the interests in the insurance

trust originally possessed by Thomas and his widow and which the decedent's children received under the terms of the 1929 instrument.

The order of the Board of Tax Appeals is affirmed.

Affirmed.